115 N.J. Super. 400 (1971)
279 A.2d 900
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN B.J. BRENNAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 1971.
Decided July 15, 1971.
*401 Before Judges CONFORD, KOLOVSKY and CARTON.
Mr. M. Gene Haeberle argued the cause for appellant.
*402 Mr. Rudolph J. Rosetti, designated attorney, argued the cause for respondent (Mr. A. Donald Bigley, Camden County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, P.J.A.D.
Defendant appeals from his conviction on two counts of an indictment for possessing and selling marijuana to an undercover state trooper on July 12, 1968. He was sentenced to concurrent terms to the State Reformatory for from two to five years and fines of $200 which were suspended.[1] The grounds of appeal are: (a) violation of Sixth Amendment rights of defendant arising from the 11 months' delay between date of offense and arrest; (b) excessiveness of sentence, and (c) error in sentencing by a judge other than the trial judge.
Defendant was 18 years of age at the time of the alleged offenses, a recent high school graduate. After summer working hours he frequented an apartment which was a social gathering place for young men and women. State Trooper Perozzi was assigned to undercover narcotics investigation of the apartment. Disguised in mustache and beard he became a frequent attendant at the apartment over a period of two months and purchased marijuana there, but never from defendant before July 12, 1968, although they were present at the same time on a number of occasions.
Perozzi testified that on July 12, 1968 he had an appointment to meet another habitue of the apartment there to buy marijuana; that when he arrived there that evening and asked for the other person, explaining what he wanted, one William Green, who apparently lived there, said "we have some," motioning to defendant; that Green and defendant went to a bedroom and returned with an envelope which defendant handed to Perozzi in return for five one-dollar bills, and that Green then took one of the bills from defendant, saying "I'll take my share now."
*403 Defendant denied the occurrence. He said he was sleeping in the apartment on the occasion in question when Green opened the bedroom door and asked, "Have you any grass?" He replied he did not and went back to sleep. A defense witness who had also been in the apartment gave testimony tending to support defendant's version and contradict that of Perozzi. Green was not called as a witness, having apparently been confined in jail in Florida at the time of this trial.
There was proof at the trial that the envelope purchased by Perozzi contained marijuana.
Perozzi continued to frequent the apartment for a time after the occurrences of July 12, 1968. Defendant was not arrested until June 5, 1969, having in the interim completed one year of attendance at Oglethorpe College in Atlanta, Georgia. He was released on bail pending trial, and also after sentencing, which took place May 4, 1970, pending this appeal.

I
Prior to trial defendant unsuccessfully moved to dismiss the indictment because of the 11-month delay between the alleged offense and the arrest, on the ground that his defense of the charge was impaired by the delay. His reliance is on Ross v. United States, 121 U.S. App. D.C. 233, 349 F.2d 210 (1965); see the discussion of Ross and later qualifying decisions of the same federal circuit court in State v. Rountree, 106 N.J. Super. 135 (Cty. Ct. 1969). In Ross there was a reversal of a narcotics conviction for lack of due process where the complaint against the defendant was not sworn out until seven months after the alleged offense; apart from the narcotics, the prosecution's case consisted solely of the testimony of a policeman purchaser who had to refresh his recollection of the event from a notebook, and defendant was unable to recall events of the day of the offense. The present case is obviously distinguishable. Both Perozzi and defendant had independent recollection of the day's events. Moreover, some delay (perhaps not as much as *404 here) is usual in informer cases of this kind to permit the police to complete their investigations.
In any event, the basically controlling law in this State is that ordinarily an indictment may be returned at any time within the statute of limitations and that a speedy trial is not denied unless the State fails to try defendant on a date fixed by the court upon the defendant's application to have such date specified. State v. Masselli, 43 N.J. 1 (1964). See also Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). No decision of the United States Supreme Court or of our own appellate courts has yet held that delay between the time of the State's knowledge of a defendant's involvement in a crime and the time of his indictment or arrest impairs a constitutional right. Cf. the concurring opinion of Justice Brennan in Dickey v. Florida, supra (398 U.S. at 46), 90 S.Ct. at 1573 suggesting that "[d]eliberate governmental delay designed to harm the accused" may be a denial of due process even as to the period prior to indictment.

II
Defendant has challenged the procedure in sentencing in that the sentencing was by the assignment judge of the county rather than the trial judge. Defendant's brief asserts unconstitutionality, but that question was settled adversely to the contention in State v. De Stasio, 49 N.J. 247 (1967), cert. den. 389 U.S. 830, 88 S.Ct. 96, 19 L.Ed.2d 89 (1967). Our attention was drawn to the matter of appropriateness of the procedure, apart from the question of constitutionality, in view of the consideration that sentencing should ordinarily be done by the trial judge. See State v. De Stasio 49 N.J., at 261-262 (concurring opinion). However, inquiry by us of the sentencing judge reveals that the trial judge disqualified himself from sentencing for reasons arising after the trial which need not concern us here. The assignment judge consequently possessed jurisdiction to sentence. R. 1:12-3(a).

*405 III
Defendant asserts that as a first-time marijuana offender[2] he should not, in the reasonable exercise of the sentencing judge's discretion, have been sentenced to a reformatory term, but should have been placed on probation. He particularly invokes the decision and philosophy of State v. Ward, 57 N.J. 75 (1970), decided several months after sentence was pronounced in this case. The court there stated:
We think that generally a suspended sentence with an appropriate term of probation is sufficient penalty for a person who is convicted for the first time of possessing marihuana for his own use. [at 82]
The present case is, of course, distinguishable, in that defendant was convicted of a sale as well as of possession. Moreover, the possession for which defendant was convicted cannot unequivocally be characterized as "for his own use," under the version of the facts here apparently credited by the jury.
In sentencing, the judge laid stress upon defendant's violation of probation in relation to offenses occurring subsequent to the instant offense but prior to trial and conviction therefor. While on his way back to college in October 1968 with other students in a car owned by one of them, after a visit home, according to an affidavit of defendant supplied us at our request, defendant was stopped by Georgia police who found an envelope of marijuana in the glove compartment and two marijuana cigarettes on the owner of the car. Although the drugs were not his, defendant was advised as a matter of convenience to plead guilty to possession and did so. He was sentenced to two years probation in December *406 1968. In March 1969 he was arrested on a charge of illegal use of narcotics to which he pleaded guilty and was fined $200 and costs in the Municipal Court of Medford, N.J. in August 1969 under circumstances which he explains in the affidavit as follows.
Because of finances he transferred to Camden County College in February 1969. In March he was riding with and in the car of a former fellow student and a third person. The car was stopped by Medford police who found under a seat two pipes and some hashish (a variant of marijuana) which defendant asserts was the property of the third person. He accepted an attorney's advice to plead guilty of disorderly conduct.
Were it not for the opinion in State v. Ward, supra, we would affirm the sentence without regard to what our own predilections might indicate as an appropriate sentence of this first-time offender, who presents a strong case for application of the rehabilitative aspect of the sentencing function. Viewed as of prior to Ward, the principle of strong deference on appeal to the discretion of the sentencing judge would control, particularly because of the subsequent violation of record of the Georgia probation  a factor which the court could properly consider notwithstanding the events involved postdated the instant offense.
There is nothing suggestive of criminality about this young man or his background apart from the troubles the use of marijuana has led him into.[3] The record does not suggest he is a professional purveyor of drugs. According to the presentence report, he comes from a comfortable, middle-class home and has had good upbringing. His high school record was above average. He has always had after-school and summer employment at remunerative positions. He regularly attends at his church. His involvement in the matters discussed herein has been a source of deep distress to his parents and younger brother.
*407 The presentence report in this matter concludes:
It is felt at this time subject should receive a fine, a suspended sentence and a period of probation as opposed to incarceration. Since it does appear that the subject is attempting to become a useful adult, being gainfully employed and attempting to expand his education, it is felt that he should be given a chance to prove himself. It is hoped that probation supervision will enable and educate the subject to become aware of the consequences which often result with drug associations.
At the sentencing the prosecutor said he had no recommendation but would rely on the presentence report. In the affidavit to this court defendant avers that since March 7, 1969 he has not used nor sold to anyone else nor been associated with anyone who in his presence partook of any narcotics or marijuana and that he will never do so again in the future. He has applied for and been accepted to return to Oglethorpe College for the 1971 summer session and intends to complete his education there. He already has five semesters of college to his credit. He has been engaged to be married since August 30, 1970, but education and marriage plans are entirely contingent on the outcome of this case. Penal incarceration would destroy his prospects. Because of the unfortunate delays attendant on prosecution and review since the offense and the consequent three-year lapse, a two-year incarceration commencing now could be argued to be ill-designed to serve any useful purpose and to be unusually punitive in effect.
It is true that in Ward the Supreme Court confined its holding to a first-offender possessor of marijuana, while here we have a sale. But the pronouncement there was a fixed, no-jail rule for initial possessors of marijuana. The question here is the exercise of discretion in favor of a seller-user of that drug under favorable rehabilitative prospects where no aspect of commercialism is presented. Moreover, the court in Ward cited (at 83) from a 1952 Legislative Commission Report which quoted an eminent authority as saying:
*408 "There is little defense for the predatory, non-addict drug sellers who exploit our youth for profit. However, laws providing severe mandatory penalties for all who are technically guilty of selling drugs would prevent the rehabilitation of many of the younger addicts. This is true because drug users frequently sell small quantities of drugs to friends or acquaintances to obtain money to supply themselves with enough narcotics to prevent withdrawal suffering." [57 N.J. at 83; emphasis added]
The following observations in Ward as to youthful offenders are not inherently inapplicable to the case of the young man before us here. The court said:
We cannot escape the unhappy fact that our youth have been involved with marihuana in disturbing numbers. That this is so does not palliate the wrong. Nor should we be thought to encourage or condone such conduct. The statute should and will be enforced. But it remains the policy of the law to reform the youthful offender. Sentencing judges should direct the punishments they impose to the goal of reformation. Too severe a punishment will do little towards advancing this goal. Incarceration is a traumatic experience for anyone. The effect must be particularly devastating upon young persons such as the defendant here. A sentence of two to three years in State Prison in a case like this will probably be more detrimental to both the offender and society than some other discipline. Even a sentence to a reformatory as suggested by the Appellate Division may be more punitive than is required. [at 82; emphasis added]
In all fairness both to defendant and the sentencing judge who was without the benefit of Ward, and the additional facts bearing upon considerations favorable to rehabilitative treatment of defendant emerging since sentencing, we remand for reconsideration of sentence. A supplemental presentence report bringing the investigation down to date should be made available to the sentencing judge.
Remanded.
NOTES
[1] A considerable number of changes have been made in the narcotics laws by L. 1970, c. 226 (N.J.S.A. 24:21-1 et seq.).
[2] Under the criminal narcotics laws, as of the time of this offense, while a first offender could be given probation, N.J.S. 2A:168-1, if he was not given probation, the minimum prison term was two years. N.J.S.A. 24:18-47. One is a "first offender" under the statute if the offense is committed prior to any conviction for a different offense, even if the latter is committed first. State v. Johnson, 109 N.J. Super. 69 (App. Div. 1970).
[3] The presentence report indicates he was a user of marijuana at the time of the offense.