Louis Wallace:, J.
The defendants in this action are two young men who have pleaded guilty to attempted criminal possession of marijuana, an E felony.
Both men, Paul Warren and William Apted, are represented by the same attorney. Counsel has filed a presentence memorandum, authorized by GPL 390.40, seeking to persuade this court to grant leniency. In presentence conferences, counsel has requested this court to consider the possibility of either probation or conditional discharge, rather than the harsher sentence of imprisonment. In view of some of the unique questions of law that must necessarily be passed upon in considering this application, the court will treat the issues raised in a sentence memorandum pursuant to GPL 400.10.
It is to be noted that while this request for leniency was originally made on behalf of both men, defendant Paul Warren failed to appear for sentence on October 22, 1974. A bench warrant was thereupon issued. As said defendant has absented himself from the court’s jurisdiction, this memorandum will limit itself solely to defendant William Apted’s application for leniency.
At the outset, it is clear that the new and more liberal access presentence sections of the Criminal Procedure Law now grant an attorney every opportunity to assist in the sentencing procedure. Articles 390 and 400 of this law permit counsel to present all facts which might bear on his client’s future, and the court may even hold a hearing to evaluate such information (GPL 400.10). Further, while there is currently no legal obligation on the court to “ summarize the factors it considers relevant for the purpose of sentence ” (GPL 380.50), these sections afford the sentencing Judge a procedural basis for placing his reasons on record in those cases where the rehabilitory needs of the defendant, the guidance of the Probation Department, or due process require same. (Cf. Gagnon v. Scarpelli, 411 U. S. 778; Morrissey v. Brewer, 408 U. S. 471; People ex rel. Menechino v. Warden, 27 N Y 2d 376.)
In this case, the attorney advances the theory that his client was a young man who mindlessly violated the law by bringing marijuana into Kennedy Airport. Counsel maintains that & harsh penalty would be inappropriate in light of the facts, stressing the background of his client and the nature of the crime itself. It is suggested that a felony conviction is ample enough punishment without imprisonment. Thus, before this court can evaluate these contentions, it must briefly analyze the defendant, his background, and the nature of his crime.
*779 I.
The facts in this case are as follows. On March 5, 1974, the defendant, approximately 30 years of age, was arrested at Kennedy Airport for knowingly having in his possession a quantity of marijuana in excess of one ounce. The records indicate that the police received information that two bags containing contraband were to be flown in from San Diego on a specific airlines flight. The authorities, forewarned, waited at the baggage area as the defendant and his codefendant claimed these bags. Both men were immediately arrested and the bags were opened. One contained 38 pounds of marijuana; the other some 36 pounds. On June 17, 1974 both defendants in the presence of counsel pleaded guilty to attempted criminal possession of controlled substances in the sixth degree.
The defendant subsequently advised the court that they had met some people at a party in San Diego who offered to pay their plane fare back to New York City if they agreed to bring in these bags. They were further advised that if they delivered these bags to unknown parties they would be paid an additional amount between $500 and $1,000. Both men accepted the offer and were aware that the bags contained marijuana.
As for defendant’s background, his pedigree indicates that he comes from an average, middle class family. He has college training. Presently unmarried, he is engaged. The attorney further points out that the defendant is employed and has a history of stable employment. The defendant appears to be in excellent physical and mental health. There is no evidence of drug addiction or indication that defendant presently uses marijuana. Finally, the defendant has no prior arrest record; this appears to be his first offense.
Counsel next seeks to have the court consider the nature of the crime itself. The attorney has argued that to jail a person in this day and age for possession of marijuana is a futile act, vindictive in nature and one that will not serve the needs of society. In support of this position, he has submitted a well reasoned ‘ ‘ memo on marijuana ’ ’ indicating that this substance cannot be considered a hard drug but should be regarded in the category of alcohol.
Based, then, on the character of the defendant and the nature of crime, he has sought a sentence which will eliminate or minimize incarceration.
In considering the application, this court first turns to the record. The defendant in this action has pleaded guilty to a class E felony. Society considers this degree of crime so seri *780 ous as to warrant imprisonment not to exceed four years. In light of this clear expression of the Legislature’s will, the court cannot go into merits of whether marijuana is a harmful drug. For the purpose of sentencing, it is harmful — a dangerous drug whose possession is banned by New York State.
Starting from this premise, the court notes that while the defendant may be youthful, he is not young. He is 30 years of age — a Renaissance life span — and certainly has seen enough of life to know what he did. As to the act itself, what may have started out a mindless caper swiftly deteriorated into a crime. The party ended at Kennedy Airport. There can be no doubt that he is guilty of committing a serious criminal act.
However, the fact of guilt is merely a starting point. Every sentence imposed sends a man on an unknown journey: and the court, if it possesses any vision of justice, must provide a reason for that journey. It must seek to impose a sentence that balances the punitive demands of society with the rehabilitative needs of the defendant. Granted, frequently these are contradictory goals — sometimes almost impossible ones — yet both aspects must be considered and somehow achieved within the rigid framework of the Penal Law. If such an effort is not made, then any sentence passed, while it may be a legal one, will not be a just one.
Keeping these goals in mind, the court takes cognizance of the age and background of the defendant. His record indicates that he is not a criminal and has no history of antisocial acts. Up to this point, his life has been productive, and he is gainfully employed. In addition, the crime involved in this action was not a violent one; it was victimless and originated as much out of indifference as from greed. Yet, it is this indifference that poses a major problem in determining a just sentence since it is obvious that the defendant has no conception of the seriousness of his acts. He did not bring in merely a pinch of marijuana for personal or friends’ use; he carried in, with another, over 75 pounds to be delivered to a stranger. Such indifference to his own welfare and the needs of society requires some form of punishment that will jolt him back into reality. Unfortunately, the only way this court knows of impressing him with the seriousness of his act is to impose some form of incarceration, a “ taste of jail ”. In addition to a minimal period of jail, this court is equally convinced that such a sentence would be meaningless unless immediately followed by an extensive period of judicial supervision.
*781 ii.
In considering incarceration, this court turns to the Penal Law. There appear to be only two forms of imprisonment in a case of this nature. The first would be the standard indeterminate sentence of imprisonment for a felony under section 70.00 (subd. 2, par. [e]) of the Penal Law. This section reads: “ For a Class E felony, the term shall be fixed by the court, and shall not exceed four years.” This sentence would give defendant the benefit of imprisonment plus supervision by the Board of Parole. However, analyzing all the facts of this case, this court is of the belief that an indeterminate sentence would be excessive. A second form of imprisonment that might be imposed is an alternate definite sentence for a class D or a class E felony under section 70.05 of the Penal Law (now renumbered § 70.00, subd. 4). This section would grant the court the right to impose a definite sentence of one year or less. The drawback in such a sentence would be that, even if the court imposed a term of one year or less, there would be no supervision once sentence was served. In the ease before us, this court feels that some form of supervision is essential due to the immaturity of the defendant.
If these two options are the only two that are available, this court then reluctantly would consider imposing an indeterminate sentence, although believing that this would be on the excessive side.
In this dilemma, counsel has suggested that his client might be sentenced under a new provision of the Penal Law, the so-called “ split sentence ” section. This section is 60.01 (subd. 2, par. [d]) of the Penal Law, permitting a compromise form of sentence in which the defendant might be imprisoned for a short period of time and then be placed under probation. On the face of it, this section would appear eminently suitable since it would give the required “ taste of jail ”, as the commentary deems it, and guidance for a longer period of time. However, the effective date of this statute is September 1, 1974, and the crime before us took place on March 5, 1974. This raises the first unique issue. May the court lawfully utilize this new section when the crime took place before the date of the amendment? A review of the section shows that no provision is made for retroactive use, and general principles of law would indicate that it would not apply to any prior crime on ex post facto grounds. This, in turn, calls for a determination of whether paragraph d of subdivision 2 is ex post facto to crimes committed prior to the effective date of this section.
*782 Up to September 1, 1974, subdivision 2 of section 60.01 of the Penal Law dealt with revocable sentences and read as follows:
“ 2. Revocable dispositions.
“ (a) The court may impose a revocable sentence as herein specified:
“ (i) the court, where authorized by article sixty-five, may sentence a person to a period of probation or to a period of conditional discharge as provided in that article; or
“ (ii) the court, where authorized by article eighty-five, may sentence a person to a term of intermittent imprisonment as provided in that article.
“(b) A revocable sentence shall be deemed a tentative one ■to the extent that it may be altered or revoked in accordance with the provisions of the article under which it was imposed, but for all other purposes shall be deemed to be a final judgment of conviction.
“ (c) In any case where the court imposes a sentence of probation, conditional discharge, or a sentence of intermittent imprisonment, it may also impose a fine authorized by article eighty. ’ ’
On June 7,1974, by virtue of chapter 835 of the Laws of 1974, subdivision 2 of section 60.01 of the Penal Law was amended, effective September 1, 1974, by adding a new paragraph (d) which reads as follows: “ (d) In any case where the court imposes a sentence of imprisonment not in excess of sixty days, it may also impose a sentence of probation or conditional discharge provided that the term of probation or conditional discharge together with the term of imprisonment shall not exceed the term of probation or conditional discharge authorized by article sixty-five of this chapter.”
In considering this area, it is clear that our Constitution prohibits any penalty or punishment which is ex post facto. An ex post facto law has been defined as one which imposes punishment for an act not criminal when committed or imposes additional punishment after the act, or changes the rule of evidence to require less or different testimony to convict of the act already done. (Burch v. Newbury, 10 N. Y. 374.) A classic evaluation of what acts might fall in the prohibited category is set forth in People ex rel. Pincus v. Adams (274 N. Y. 447), citing from Calder v. Bull (3 Dallas [3 U. S.] 386, 45A-455): 1,11 will state what laws I consider ex post facto laws within the words and the intent of the prohibition. 1. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. *783 2. Every law that aggravates a crime, or makes it greater than it was when committed. 3. Every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed. 4. Every lawr that alters the legal rules of evidence and receives less or different testimony than the law required at the time of the commission of the offense, in order to convict the offender.”
Applying these standards to the split sentence provision, it would appear that this section falls within the third general category, namely, laws dealing with punishment. The general rule in regard to punishment appears to be: (1) Statutes which increase punishment for previously committed crimes have always been regarded as ex post facto. (People ex rel. Pincus v. Adams, supra.) (2) On the other hand, “ a statute which permits [a] * * * lesser clegree * * * of punishment than was permissible when the offense was committed, cannot be * * * regarded as an ex post facto law.” (People v. Hayes, 140 N. Y. 484, 490.)
Thus, it Avould appear that if a statute reduces punishment its benefits may be applied, and-if it increases punishment, it might not be utilized. (People v. Rosenfeld, 61 Misc 2d 72, 77.) In the case at bar, strictly speaking, the new section neither adds nor subtracts from defendant’s punishment. It merely permits the court an alternative form of sentencing. If the defendant is sentenced to an indeterminate term, he could receive a maximum incarceration of four years. Under the new section, the defendant would receive a prison sentence of only 60 days and •the balance of his term would be probation. Probation is fixed by law at five years in the case of a felony. (Penal Law, § 65.00, subd. 3, par. [a], cl. [1].) Mathematically speaking then, the new section might be construed as adding a year to defendant’s sentence. Yet, in People v. Oliver (1 N Y 2d 152), when our highest court discussed the question of what constitutes a penalty, it indicated that one’s punishment is not to be strictly equated with one’s senten.ee, but rather is to be considered in the broadest and most humane terms. As was stated at page 160: ‘ ‘ This application of statutes reducing punishment accords Avith the best modern theories concerning the functions of punishment in criminal law. According to these theories, the punishment or ^treatment of criminal offenders is directed toward one or more of three ends : (1) to discourage and act as a deterrent upon future criminal activity, (2) to confine the offender so that he may not harm society and (3) to correct and rehabilitate the offender. There is no place in the scheme for pun *784 ishment for its own sake, the product simply of vengeance or retribution. (See Michael & Wechsler on Criminal Law and its Administration [194.0], pp. 6-11; Note, 55 Col. L. Rev., pp. 1039, 1052.) A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law. Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance. As to a mitigation of penalties, then, it is safe to assume, as the modern rule does, that it was the legislative design that the lighter penalty should he imposed in all cases that subsequently reach the courts(Italics supplied.)
Based, then, on this mitigating test, this court feels that the avoidance of a harsh jail term imposes a lighter penalty on defendant than would have been the case if the statute did not exist, and this outweighs any possibility of harm that a longer probation sentence might carry. This being so, the new sentence is ameliorative in nature in that it confers a benefit by granting defendant a method in which he would serve a shorter jail sentence. If the law then is ameliorative, it does not violate the ex post facto doctrine, and this court may and will utilize the benefit of this section by imposing a sentence of 60 days’ imprisonment and probation for the balance.
m.
One final point remains. This court has been advised that a jail sentence might affect defendant’s current employment. Loss of employment and financial harm are certainly factors which a court should take into consideration in determining sentence. To avoid undue hardship and emphasize the therapeutic nature of the sentence, this court will direct that any jail term shall be served in such a manner as not to jeopardize employment.
In carrying out this goal the court directs that defendant’s 60-day sentence be served as a sentence of intermittent imprisonment pursuant to article 85 of the Penal Law. This unique section is comparatively new and appears to have been given the informal title of “weekend sentence”. To this court’s knowledge it has been utilized in the past only by the lower courts, but there is no legal reason why it cannot be applied under the circumstances of this case.
The Practice Commentary under this article (by Peter McQuillan), quoting from the Preliminary Report of the Spe *785 cial Committee on Criminal Offenders, states that part of the rationale behind this flexible view of sentencing is (McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, 1973-1974 Pocket Part, p. 122): “ that incarceration can no longer be viewed solely in terms of its historical meaning. Instead, incarceration must be viewed as an instrumentality — rather than as a distinct concept — that can be used in accordance with specifically identified purposes. ‘ If we wish to use incarceration as punishment for individual deterrence, or for preventive force * * *• or where part of a rehabilitation program is best administered m an institutional setting * * * we can use it for a day, a week, a month or a year or more, or we can use it for part of a day, or on certain days of the week, as needed in the individual case ’ (Preliminary Report, pp. 98-99).” (Emphasis supplied.)
The Practice Commentary to the Penal Law further points out that a valid use of this section is “to permit sentences of short duration to be served intermittently. This would allow some offenders to hold a job, remain with their family or benefit from other community contacts while serving their sentences on weekends, evenings, or specific days of the week.” {Supra, p. 122.) Such reasoning would apply to defendant Apted.
The Penal Law (§ 85.00, subd. 2, pars, [a], [b], [c]) authorizes the use of this sentence where.:
“ (a) the court is imposing sentence, upon a person other than a second or persistent felony offender, for a class D or class E felony or any offense that is not a felony; and
“ (b) the court is not imposing any other sentence of imprisonment upon the defendant at the same time; and
“ (c) the defendant is not under any other sentence of imprisonment with a term in excess of fifteen days imposed by any other court”.
In this case, the court has in mind a sentence of intermittent imprisonment for a period not in excess of 60 days, which shall be served on the 8 weekends between November 9, 1974 and December 29, 1974, both inclusive. Each time of imprisonment shall start at 8:00 a.m. Saturday and end at 6:00 p.m. Sunday. In addition, the defendant shall be under probation for 4 years and 10 months. The court will specify these terms in the order of commitment (Penal Law, § 85.00, subds. 3, 4; § 85.10).
As regard to this particular form of sentence, the court has been advised by the Department of Correction that there is a segregation area in Riker’s Island which has been set aside for such limited imprisonment; and that such sentences will impose *786 no administrative difficulties on correctional facilities. (A commitment order will accompany the prisoner as required by law [Penal Law, '§ 85.10].)
It is the court’s hope that such a limited sentence which imposes a minimum of jail time served and a maximum of judicial supervision will best serve the needs of this defendant and shake him out of his indifference to the laws of this society.
This sentencing memorandum constitutes the court’s answer to defendant’s presentencing applications.
The defendant is ordered to appear before this court on November 7, 1974 for the purpose of being sentenced in accordance with the views expressed in the above memorandum.