STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
JAMES S. MARZOLF, DEFENDANT-RESPONDENT.

Argued October 16, 1978—Decided February 14, 1979.

168

*Ms. Carole Fitzgibbon Greco,* Assistant Prosecutor argued the cause for appellant (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Donald S. Coburn,* Essex County Prosecutor, of counsel).

The New Jersey Prosecutors' Association, *amicus curiae,* joined in the brief filed on behalf of the appellant (*Mr. James T. O'Halloran,* Hudson County Prosecutor, attorney).

*Mr. Alan Silber* argued the cause for respondent.

The opinion of the court was delivered by

HANDLER, J. This case concerns the validity of a custodial sentence imposed upon defendant, James Marzolf, for the possession of marijuana, following a plea bargain pursuant to which a second charge, possession of marijuana with intent

to distribute, had been dismissed. In imposing the six months custodial sentence, the court took into consideration the quantity of marijuana involved, drawing the inference that defendant's possession was "commercial" in nature. The Appellate Division, in a reported opinion, 152 *N. J. Super.* 47, reversed and remanded. It held that the judge in sentencing defendant as a first offender for the simple possession of marijuana should not have considered the quantity of marijuana involved or, alternatively, should not have accepted the plea bargain if he intended to sentence defendant on the basis of the dismissed count of possession with intent to distribute. We granted certification. 75 *N. J.* 585 (1977).

Defendant Marzolf and one Richard Levine were indicted on the criminal charges of possession (*N. J. S. A.* 24:21–20) and possession with intent to distribute (*N. J. S. A.* 24:21–19) twenty-five pounds of marijuana. Prior to trial Levine entered into a plea bargain with the prosecutor's office, pleading guilty to the count of possession and agreeing to testify for the State at defendant's trial in exchange for a dismissal of the intent charge and a recommendation of a noncustodial sentence. Marzolf's trial then commenced and several days later, after the matter had been submitted to the jury but before a verdict had been rendered, he and the State entered into a plea bargain. Defendant undertook to plead guilty to the count of possession; the State in turn proposed to dismiss the count of possession with intent to distribute and agreed that no perjury charges stemming from defendant's testimony at trial would be brought; it made no recommendation as to sentencing. Before accepting the guilty plea, the trial court examined defendant as to his possession of the marijuana and satisfied itself that defendant knew that the court was not a party to the agreement, that the court could not promise a noncustodial probationary term and that defendant could be sentenced to a maximum of five years in State Prison and be subjected to a fine of $15,000. The judge then accepted the plea of guilty to the count of possession and

declared a mistrial. Bail was continued and the matter scheduled for sentencing.

At sentencing, in addition to the knowledge of defendant's crime acquired during trial, the court had available a full presentence investigation report. According to its "official version", detectives of the Essex County Bureau of Narcotics arranged by telephone to buy a quantity of marijuana. At the time and location of the arranged meeting, 2:00 A.M. at a Citgo Station in South Orange, a car approached. Police officers asked the passengers to get out and identify themselves. Neither of the occupants, defendant or Levine, had a registration for the car. In the back seat of the car next to defendant the police found a duffle bag. When questioned defendant said it contained laundry. Some clothing fell out of the bag and the police were then able to see what appeared to be blocks of marijuana. The two occupants were arrested. The duffle bag contained 11 bricks of marijuana. Another half brick and a clear plastic bag which appeared to contain marijuana were also found. Subsequent chemical analysis showed that one of the bricks was composed of 819.9 grams (29.2 ounces) of marijuana. The total weight was 25 pounds with a retail market value of $30,000. The report included a characterization of defendant as a large-scale dealer in the drug, to which defendant objected and the court agreed to disregard that information. The presentence report also contained defendant's version of the crime, in which he acknowledged that he and Levine were arrested at approximately 2:00 A.M. in South Orange and that the car had been driven from Pennsylvania en route to Union, New Jersey. Defendant disclaimed responsibility for the distribution of the marijuana. However, he was obviously fully aware not only of the presence of the marijuana in the automobile but also of its intended distribution, which, he claimed, was to be handled by Levine.

The court sentenced defendant to an 18-month term in the County Correctional Center, six months of which were to be served in custody, with the balance suspended subject to pro-

bation together with a fine of $500. The reasoning expressed by the judge at sentencing is important. To a great extent, it is reflected in the colloquy between the court and defense counsel, as well as the assistant prosecutor, which focused upon whether defendant (then 22 years old) was entitled to be considered for sentencing purposes as a youthful, first-time marijuana offender charged only with the simple possession of marijuana. Defense counsel stressed that defendant should be so regarded and be accorded the benefit of a lenient, noncustodial sentence following the views expressed by our courts in *State v. Ward,* 57 *N. J.* 75 (1970) and *State v. Brennan,* 115 *N. J. Super.* 400 (App. Div. 1971) (dealing with the sentencing of a first-time marijuana offender). The judge voiced doubt as to the applicability of either of these cases to a situation having commercial overtones. Defense counsel then stated:

* * * But what I'm suggesting to the Court is when you're dealing with marijuana, in the first place, everybody who is involved with marijuana is involved on a voluntary basis. There's no such thing as a physical kind of addiction when you're dealing with that kind of social phenomenon. The Court, whether it be for commercial or noncommercial, when you're dealing with young people, college age with great promise, the Court would want to exercise as much leniency as possible. The thought that there might be a suggestion, despite the fact that there was a plea of guilty of simple possession and a dismissal of the Prosecutor's office of possession with intent, I would hate to think in spite of the fact that the defendant has pleaded to a simple possession and the possession with intent to distribute is being dismissed that the defendant would be sentenced as if he pleaded guilty to possession with intent to distribute.

To which the court rejoined:

No, sir. What I'm telling you is that I am considering the quantity of marijuana and his possession in determining whether or not there was a suggestion of commercialism in order to follow the dictates of *Ward* and *Brennan* or not. That's what I'm telling you.

The judge emphasized what he saw as the commercial aspect of the offense:

You went out and actively obtained and was [sic] in possession of 25 pounds of marijuana which the probation department indicates has a wholesale value of about $5,000 and a retail value of $20 to $25,000. I doubt very much whether you had intentions of using any of that marijuana for your own personal use. I suspect very strongly that you only obtained possession of that marijuana to make a profit at the expense of other people your own age.

The court stressed deterrence of both defendant and others as a basis for imposing the six months custodial sentence. On the actual judgment of conviction the judge noted reasons for the sentence imposed:

To punish the defendant for the serious crime he has committed, to inflict sufficient punishment upon the defendant so that both he and others so inclined, will be deterred from committing like crimes in the future, to attempt to reform and rehabilitate the defendant, so that he will not waste any more of his life on crime, and to demonstrate to the defendant, by the imposition of a custodial sentence, what is in store for him should he continue to resort to such criminal conduct.

On appeal defendant argued that his sentence was manifestly excessive and should be reduced to a noncustodial term or, in the alternative, since the sentencing judge imposed a sentence based upon the count of possession with intent to distribute notwithstanding its dismissal, the plea bargain was violated and his conviction and sentence for possession should be set aside to allow him to proceed to trial on both counts. The Appellate Division vacated the sentence and remanded the matter to allow the trial judge, at his option, either to resentence defendant disregarding the amount possessed and any commercial intent that may have characterized that possession, or to vacate the plea bargain and schedule both counts of the indictment for trial.

The Appellate Division stated that the question presented on the appeal was as follows: "May a judge sentencing for simple possession consider the amount possessed and the intent with which it was possessed in determining the sentence to be imposed?" 152 *N. J. Super.* at 49. The State's

petition for certification restated the same question: "Must a judge sentencing for possession of controlled dangerous substances ignore the amount possessed and the intent with which it was possessed in determining the quantum of sentence?" The Appellate Division also ruled that if the amount of the controlled dangerous substance suggests an intent to distribute, as distinguished from possession for the defendant's own use, a trial judge should not agree to a plea bargain involving dismissal of the more serious charge if the amount is such that he could not ignore the probable existence of such an intent to distribute in imposing sentence. 152 *N. J. Super.* at 50. This appeal thus presents two inter-related issues, namely, whether a custodial sentence of a youthful, first-time offender charged with the possession of a large quantity of marijuana with substantial monetary value, obviously not intended for his own use, can be considered manifestly excessive; and, if not, whether the imposition of such a custodial sentence, taking into account the quantity of marijuana possessed, may be deemed violative of a plea bargain which involved a plea of guilty for the possession of the marijuana and the dismissal of a second count charging possession of the marijuana with intent to distribute.

I

Defendant contends that the custodial sentence is manifestly excessive because, as a first offender convicted only of simple possession of marijuana, he was entitled to receive a noncustodial term. This maximum sentence, he argues, is .mandated by *State v. Ward, supra* and *State v. Brennan, supra.* In connection with this argument, the State raises a threshold issue, disputing that defendant is a first offender.

Defendant's status as a first offender was raised before the sentencing judge. The presentence report noted that defendant had a prior conviction for possession of under 25

grams of marijuana. Defense counsel pointed out to the sentencing judge, however, that the presentence report was incorrect. Defendant's prior offense had resulted in supervisory treatment pursuant to *N. J. S. A.* 24:21–27 and a discharge with improvement, rather than a conviction. The judge accepted this correction by defense counsel and apparently considered defendant to be a "first offender". The Appellate Division simply assumed that defendant was a first offender. 152 *N. J. Super.* at 49.

We agree that a defendant, whose record reveals only that he received supervisory treatment and a conditional discharge for a prior drug arrest, should be regarded generally as a first offender for sentencing purposes. *N. J. S. A.* 24:21–29 allows imposition of a sentence twice as severe as that which can be given a first offender. *N. J. S. A.* 24:21–27(b) provides: "* * * Imposition of supervisory treatment under this section shall not be deemed a conviction for the purposes of determining whether a second or subsequent offense has occurred under section 29 of this act or any law of this State." That statutory policy would undoubtedly be furthered by not regarding such supervisory treatment and conditional discharge as tantamount to a conviction for general sentencing purposes. This is not inconsistent with the statutory directive of *N. J. S. A.* 24:21–27(b) that such a defendant is eligible only once for conditional discharge proceedings. *Cf. State v. Occhipinti,* 153 *N. J. Super.* 62 (Law Div. 1977).

Although defendant is to be regarded as a first offender, it does not follow that the infraction which has resulted in supervisory treatment loses all relevance for sentencing purposes. It may well have a bearing upon a defendant's culpability and awareness of the criminal implications of his conduct, factors relating to amenability to rehabilitation as well as the appropriateness of deterrence. At sentencing there should be presented "the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York,* 337 *U. S.* 241, 247, 69 *S. Ct.*

1079, 1083, 93 *L. Ed.* 1337, 1342 (1949). The defendant's background, including prior arrests or juvenile offenses, should be fully exposed, even though no convictions have ensued. See, *e. g., State v. Sayko,* 71 *N. J.* 8, 13 (1976); *State v. Green,* 62 *N. J.* 547, 561–572 (1973); *State v. Alston,* 136 *N. J. Super.* 456 (App. Div. 1975), aff'd 71 *N. J.* 1 (1976); see also *State v. Moore,* 93 *Idaho* 14, 454 *P.* 2d 51 (Sup. Ct. 1969); *Waddell v. State,* 24 *Wis.* 2d 364, 129 *N. W.* 2d 201 (Sup. Ct. 1964); see generally, *Annot.,* "Court's right in imposing sentence, to hear evidence of, or to consider other offenses committed by defendant." 96 *A. L. R.* 2d 768 (1964). A drug offense which has resulted in supervision and discharge is part of the defendant's personal history to be revealed for purposes of sentencing provided it is not given the weight of a criminal conviction.

We return to the main point of defendant's initial argument: whether the custodial sentence was manifestly excessive. This Court has addressed rather fully the problems of sentencing youthful marijuana offenders in *State v. Ward, supra.* There the defendant, a first offender, who possessed a relatively small amount of marijuana solely for his own use, was convicted of possession of marijuana and sentenced to two to three years in State Prison and fined $100. He claimed the sentence was excessive. The Court wrote:

We cannot escape the unhappy fact that our youth have been involved in marihuana in disturbing numbers. That this is so does not palliate the wrong. Nor should we be thought to encourage or condone such conduct. The statute should and will be enforced. But it remains the policy of the law to reform the youthful offender. Sentencing judges should direct the punishments they impose to the goal of reformation. Too severe a punishment will do little towards advancing this goal. Incarceration is a traumatic experience for anyone. The effect must be particularly devastating upon young persons such as the defendant here. A sentence of two to three years in State Prison in a case like this will probably be more detrimental to both the offender and society than some other discipline. Even a sentence to a reformatory as suggested by the Appellate Division may be more punitive than is required. We think that generally a suspended sentence with an appropriate term of proba-

tion is sufficient penalty for a person who is convicted for the first time of possessing marihuana for his own use. Probation is designed to aid both society and the offender by affording opportunity for correction under suitable supervision. It is hoped that during the probation the offender will establish himself as a law-abiding member of the public and thus avoid the need for confinement with its possibly adverse consequences. [*Id.* 57 *N. J.* at 82–83].

Defendant's reliance upon *Ward* is clearly misguided. His situation is distinguishable in every material respect. Here defendant was possessed of a substantal amount of marijuana. Its monetary value for resale, estimated to be $30,000, was too great to permit the belief that it would be kept only to serve defendant's pleasure. The amount was so large that, according to the presentence report, defendant would have to spend a considerable portion of the balance of his life smoking the drug in order to consume it, a hypothesis seemingly at odds with defendant's own professed plans of attending college and continuing his education. Moreover, defendant admitted that the marijuana was destined for distribution (albeit the "details" were to be left to Levine) and he never claimed the drug was for his own personal use.

Defendant's resort to *State v. Brennan, supra,* is equally misdirected. The defendant there was a first offender and only 18 years old when he was convicted of possession and sale of marijuana and sentenced to suspended concurrent terms of two to five years in the then State Reformatory and fines of $200. Although the Appellate Division found the circumstances distinguishable from *Ward,* because of the presence of a sale, it believed that rehabilitation should be given greater weight and remanded for reconsideration of sentence. The court emphasized that the amount sold was small and there was no other suggestion of any criminality in the defendant's background or that he was a professional purveyor of drugs. It stated:

It is true that in *Ward* the Supreme Court confined its holding to a first-offender possessor of marijuana, while here we have a sale.

But the pronouncement there was a fixed, no-jail rule for initial possessors of marijuana. The question here is the exercise of discretion in favor of a seller-user of that drug under favorable rehabilitative prospects *where no aspect of commercialism is presented.* [115 *N. J. Super.* at 407]. (Emphasis supplied).

*Cf. State v. Milligan,* 71 *N. J.* 373 (1976).

Defendant stresses that he was convicted only of possession of marijuana — he refers to this as "simple possession", although that expression is not to be found in the statutory definition of the crime, — and that this drug has become socially acceptable and is not a virulent narcotic. Therefore, according to defendant, the quantity of the drug possessed should not have been a determinative factor in sentencing. The Appellate Division apparently accepted defendant's characterization of his offense as "simple possession" and his contention that a custodial sentence based upon quantity is inappropriate unless possession with intent to distribute has also been charged and sustained. We disagree.

 The principles which are generally acceptable to the sentencing of criminal defendants remain applicable to persons charged with drug offenses. We have stated that

[i]n fixing a sentence a judge should consider the gravity of the crime and appropriate punishment therefor, deterrence, protection of the public, rehabilitation and any other factors or circumstances relevant to the particular situation. [*State v. Jones,* 66 *N. J.* 563, 568 (1975)].

Most recently these precepts were restated in *State v. Leggeadrini,* 75 *N. J.* 150 (1977). It is a tenet in sentencing that, where a defendant is young and without a prior record, the courts will strive for his reformation. Incarceration of the young, immature and criminally uninitiated defendant charged with less nefarious drug offenses is to be shunned in order to avoid the lasting, pernicious effects of prison. See, *State v. McBride,* 66 *N. J.* 577, 580 (1975) ; *State v. Ward, supra; State v. Brennan, supra.*

Yet, neither the defendant nor his offense should be fictionalized for purposes of sentence. The "whole person", not censored versions of his personal history or selected facets of his character, is to be addressed in fashioning an appropriate sentence. *State v. Sayko, supra; State v. Green, supra.* A sentencing judge should fully assess the totality of circumstances, "including the details of the offense", *State v. Alston, supra,* 136 *N. J. Super.* at 459; see *State v. Johnson,* 137 *N. J. Super.* 27 (App. Div. 1975); *cf. State v. Milligan, supra.* In imposing sentence for so-called simple possession of narcotics, the amount involved is generally considered a factor of obvious import. See, *e. g., People v. Thomas, Colo.,* 543 *P.* 2d 1249 (Sup. Ct. 1975); *State v. Morales,* 51 *Wis.* 2d 650, 187 *N. W.* 2d 841 (Sup. Ct. 1971); *Ryles v. State,* 303 *P.* 2d 449 (Okl. Cr. 1956); *State v. Basurto,* 18 *Ariz. App.* 342, 501 *P.* 2d 970 (Ct. App. 1972); *cf. State v. Villa,* 111 *Ariz.* 371, 530 *P.* 2d 363 (Sup. Ct. 1975); *State v. Shing,* 109 *Ariz.* 361, 509 *P.* 2d 698 (Sup. Ct. 1973); *Couser v. State,* 31 *Md. App.* 401, 356 *A.* 2d 612 (Ct. Spec. App. 1976); *People v. Warren,* 79 *Misc.* 2d 777, 360 *N. Y. S.* 2d 961 (Sup. Ct. 1974), aff'd *sub nom., People v. Apted,* 51 *A. D.* 2d 1024, 381 *N. Y. S.* 2d 423 (App. Div. 1976). See generally, *Annot.,* "Review for excessiveness of sentence in narcotics case", 55 *A. L. R.* 3d 812 (1974). Quantity alone may swing the sentencing pendulum from leniency to severity. Compare *State v. Ward, supra* with *Gray v. State,* 561 *P.* 2d 83 (Okl. Cr. 1977) (one year sentence reduced to 60 days on conviction of possession of marijuana where "very small amount" of marijuana seized) and with *People v. Warren, supra* (guilty plea to charge of attempted criminal possession of marijuana; sentencing judge noted that defendant brought in 75 pounds of marijuana and therefore imposed "form of punishment that will jolt him back into reality.").

To call defendant's possession of a substantial amount of valuable marijuana "simple possession" is something of a

misnomer. It may serve as convenient shorthand to distinguish the statutory charge of possession, *N. J. S. A.* 24:21-20, from the charge of possession with intent to sell or distribute, *N. J. S. A.* 24:21-19. Nevertheless there are gradations of possession, apart from the intent to distribute, which parallel degrees of culpability. See Degnan, "Marijuana and Hashish: A Decriminalization Proposal", 6 *Crim. Just. Q.* ——, ——, (1979) (ms. pp. 5, 26); *cf. State v. Jester,* 68 *N. J.* 87 (1975); *State v. Davis,* 68 *N. J.* 69 (1975); *State v. Ruiz,* 68 *N. J.* 54 (1975); Hyland, "Drug Abuse and the State Criminal Justice System: Alternatives to Existing Modes of Treatment", 2 *Crim. Just. Q.* 167 (1974). Thus, possession of a drug is rarely "simple" and should not be so considered solely because the surrounding circumstances have not justified or might not sustain beyond a reasonable doubt the more serious charges associated with distribution. *Cf. State v. DiLuzio,* 130 *N. J. Super.* 222, 230-231 (Law Div. 1974) (on motion to suspend proceedings following charge of possession of heroin, court can consider reliable evidence indicating that defendant was seller of drugs even if defendant not charged with possession with intent to distribute); *People v. Thomas, supra* (sentencing judge did not improperly consider additional 96 balloons of heroin disclosed in presentence report, notwithstanding their suppression as evidence at trial).

■■ Defendant's possession in this case was not simple or innocuous. Even though he was not guilty of the more serious offense of possession with intent to distribute, he conceded that "[t]he amount involved — approximately 20 to 25 pounds — is larger than that normally associated with personal use. It cannot be denied that the facts as developed by the State at trial, suggest commercial motive in the possession." The sentencing judge drew the inescapable inference from the quantity of marijuana defendant possessed that it was not held solely for his own use. Although the court believed that defendant's interest in the marijuana was commercial, the fundamental point is that the quantity

alone served to make defendant's possession a much more serious and dangerous matter than would the possession of a lesser amount. Possession of a substantial amount of a controlled dangerous substance may be properly regarded as deserving proportionately more stringent punishment with commensurate weight being accorded to the deterrent purposes of sentencing. The six-months custodial term in this case, which emphasized these factors, was not an abuse of discretion or manifestly excessive.

## II

The Appellate Division held that the sentence imposed upon defendant was violative of his plea bargain. It believed that defendant, who was convicted of the possession of marijuana, had in effect been sentenced for the more serious charge of possession with intent to distribute which, according to the plea bargain, was to be dismissed.

Plea bargains properly administered have been approved as a useful aid to the efficient and fair administration of criminal justice. *Blackledge v. Allison*, 431 *U. S.* 63, 97 *S. Ct.* 1621, 52 *L. Ed.* 2d 136 (1977); *Santobello v. New York*, 404 *U. S.* 257, 92 *S. Ct.* 495, 30 *L. Ed.* 2d 427 (1971). Their purpose is well illustrated in this case. Defendant was charged in two counts for his unlawful possession and intended distribution of a large amount of marijuana. His case proceeded to trial and, after several days, it was submitted to the jury. The jury apparently experienced difficulty in reaching a verdict, perhaps attributable to the fact that defendant had contended that the co-defendant, Levine, was responsible for the distribution of the drug. In any event, the plea bargain undid the gordian knot. The State secured defendant's conviction of the lesser charge for possession of the marijuana and defendant escaped conviction of the second, more serious offense of possession with intent to distribute. Each side reduced certain hazards attendant upon the jury's verdict, the risk to the State of

an acquittal on both counts and the risk to defendant of a conviction on both counts. A second trial following a mistrial by a hung jury was avoided. And, since the plea bargain had to be based upon evidence of guilt in fact to the satisfaction of the trial judge, *R.* 3:9–2, fairness to the defendant, the interests of society, and the sound administration of criminal justice were served.

 If plea bargaining is to be an effective instrument for criminal justice, "[t]he terms of a plea agreement * * * should be meticulously honored by a sentencing judge * * * and a defendant should be accorded his 'reasonable expectations', *State v. Thomas,* 61 *N. J.* 314, 322 (1972)." *State v. Jackson,* 138 *N. J. Super.* 431, 434 (App. Div. 1976). Where the accused's reasonable expectations are defeated, the plea bargain has failed one of its essential purposes, fairness, and a defendant should be permitted to withdraw the plea. See, *e. g., Blackledge v. Allison, supra; Machibroda v. United States,* 368 *U. S.* 487, 87 *S. Ct.* 510, 7 *L. Ed.* 2d 473 (1962) ; *State v. Nuss,* 131 *N. J. Super.* 502, 504 (App. Div. 1974) ; *cf. State v. Jones,* 66 *N. J.* 524 (1975), *State v. Thomas, supra; State v. Poli,* 112 *N. J. Super.* 374 (App. Div. 1970). There is a difference, however, between expectations reasonably grounded in the terms of the plea bargain and wishful thinking. Defendants frequently plea bargain in the hope of receiving a lesser sentence. That their wishes are not fulfilled, however, will not automatically invalidate the plea. See *Brady v. United States,* 397 *U. S.* 742, 90 *S. Ct.* 1463, 25 *L. Ed.* 2d 747 (1970). This depends upon whether the terms of the plea agreement have been honored and whether the lesser sentence was reasonably to be anticipated from the plea bargain. See *State v. Jackson, supra.*

 Defendant here argues that he reasonably expected from his plea bargain to be granted a noncustodial term. Clearly this expectation was not reasonable. As we pointed out, *State v. Ward* and succeeding cases dealing with drug offenders reflect a strong policy of leniency and noncustodial terms only with respect to young persons, not previously

convicted, possessed of small amounts of marijuana for their own use with no suggestion of commercialism or wide-scale distribution to others. Defendant could not reasonably expect to be the beneficiary of that policy.

Defendant, moreover, cannot claim that the expressed terms of his plea bargain were defeated by the sentence imposed. The trial judge made it crystal clear to defendant on the *voir dire* examination preceding the acceptance of the guilty plea that defendant could receive a custodial sentence. There is no basis in the record that at the time of the plea bargain, defendant, the prosecutor and the court labored under any tripartite mistake that the circumstances of the crime would rule out the possibility of a custodial term. *Cf. State v. Brockington,* 140 *N. J. Super.* 422 (App. Div.), certif. den. 71 *N. J.* 345, *cert.* den. 429 *U. S.* 940, 97 *S. Ct.* 357, 50 *L. Ed.* 2d 310 (1976).

Similarly we find no substance to the argument that the judge violated the plea bargain and defendant's understanding of its terms by sentencing him upon the "elements" of the dismissed count, namely, possession of the marijuana with intent to distribute. The sentencing judge made it explicit, in response to a direct imputation by defense counsel to the contrary, that he was not sentencing defendant for possession with intent to distribute. The court did not in fact impose sentence upon the assumption or finding that defendant had pleaded guilty to that count or stood convicted of that charge. The judge pointed out that he was considering the quantity of marijuana possessed and the inference that it was not possessed solely for defendant's own use to determine whether the sentence should as a matter of sound discretion follow the pattern of *State v. Ward, supra* and *State v. Brennan, supra,* as defense counsel insisted. The court's conclusion that defendant's possession was tinged with commercialism was based upon facts which defendant himself does not dispute and which he never requested, at the time of the plea bargain, be disregarded by the court.

The court was not required to wear blinders to avoid consideration of the character of defendant's possession merely because those circumstances encompassed to some degree some of the elements necessary to sustain a conviction under the dismissed charge. *State v. Roberts,* 193 *Neb.* 363, 227 *N. W.* 2d 577 (1975); *State v. Holzapfel,* 192 *Neb.* 672, 223 *N. W.* 2d 670 (1974); *cf. Couser v. State, supra; People v. Mashaw,* 50 *A. D.* 2d 988, 376 *N. Y. S.* 2d 693 (App. Div. 1975); *State v. Castano,* 89 *Ariz.* 231, 360 *P.* 2d 479 (Sup. Ct. 1961). Where uncontroverted facts overlap two such crimes, as long as defendant is not sentenced as though guilty and convicted of the dismissed charge, the court is not put to the election, outlined by the Appellate Division, either to disregard totally the facts bearing upon the dismissed charge, notwithstanding their obvious and direct relevance to the crime to which defendant has pled guilty, or to permit withdrawal of the plea bargain and require a trial of both charges. That option is unrealistic and impractical and would undermine the utility of plea bargaining as a needed tool in the sound, fair and efficient administration of criminal justice. It assuredly is not dictated to secure fairness for a criminal defendant, since a plea bargain would not be accepted unless a defendant has had the advice of counsel and has satisfied the court that there is a factual basis for his plea and he understands fully its consequences especially its sentencing ramifications.

Defendant in this case was not confused, misled or mistaken. His counsel's claim that he believed a non-custodial term would flow as a matter of course has a hollow ring in light of the undisputed circumstances of the crime. Defendant knowingly pleaded guilty to the crime of possession of a substantial and valuable amount of marijuana, assuredly not a trivial possession; pursuant to his plea bargain he secured the dismissal and escaped conviction of the more serious charge of possession with intent to distribute and avoided a more severe penalty on the charge; his sentence with its custodial feature was not excessive and did not violate the

terms of or expectations reasonably flowing from the plea bargain.

Accordingly, the judgment of the Appellate Division is reversed and defendant's conviction and sentence are reinstated.

PASHMAN, J., dissenting. I dissent. Defendant pleaded guilty to a violation of *N. J. S. A.* 24:21–20 which prohibits the knowing possession of a controlled dangerous substance. Defendant did not plead guilty to, nor was he convicted of, the separate offense of possession "with intent to . . . distribute . . . ." *N. J. S. A.* 24:21–19. Notwithstanding, the trial judge imposed a six-month custodial sentence (as well as 12 months probation and a fine) because *he* believed that the circumstances surrounding defendant's possession suggested "commercial" overtones — that is, possession coupled with an "intent to distribute." In so doing, he in effect eviscerated defendant's due process right to be free from punishment for the commission of a specific offense unless the State proves *each and every* element of that offense beyond a reasonable doubt. *See In re Winship,* 397 *U. S.* 358, 90 *S. Ct.* 1068, 25 *L. Ed.* 2d 368 (1970). Moreover, consideration of this factor directly contravened defendant's reasonable expectations created by the terms of his agreement to plead guilty to the possession count. Consequently, he should be resentenced without consideration of commercialism or, alternatively, be permitted to withdraw his plea and stand trial.

I

*N. J. S. A.* 24:21–19 makes unlawful the possession of a controlled dangerous substance "with intent to . . . distribute . . . ." A separate statute, *N. J. S. A.* 24:21–20, criminalizes the mere "possession" of such a substance. The enactment of each of these distinct provisions is a clear legislative declaration that those whose illegal possession is

coupled with commercial aspects pose a greater threat to societal well-being, and hence are deserving of more severe punishment, than those who merely possess a controlled dangerous substance. Hence, an individual who *pleads guilty to* or *is convicted of* a violation of *N. J. S. A.* 24:21–19 should ordinarily receive a harsher sentence than that meted out to a similarly situated individual who *pleads guilty to* or *is convicted of* a violation of *N. J. S. A.* 24:21– 20. *See, e. g., State v. Ward,* 57 *N. J.* 75 (1970); *State v. Brennan,* 115 *N. J. Super.* 400 (App. Div. 1971). In order for this more severe potential sentence to be appropriate, however, the State must prove beyond a reasonable doubt that possession was in fact coupled with an "intent to . . . distribute . . . ."

The majority today relieves the State of its burden of proof with respect to this additional element. That is, the majority rules that notwithstanding the State's failure or inability to secure a conviction under *N. J. S. A.* 24:21–19, sentence can be imposed as if such a conviction was in fact obtained, as long as the prosecutor can convince the *sentencing* judge that the circumstances surrounding a defendant's possession of marijuana suggest "commercial overtones."

Such a holding nullifies a defendant's right under the due process clause to be free from sanctions imposed by a criminal statute unless the State proves beyond a reasonable doubt that the defendant has committed *each and every* element of the offense. *In re Winship,* 397 *U. S.* 358, 90 *S. Ct.* 1068, 25 *L. Ed.* 2d 368 (1970). Consequently, this case should be remanded in order that sentence be imposed without regard to any commercial overtones.

The majority conveniently ignores the due process implications of the sentence imposed below by focusing its discussion upon a matter which is not here at issue — *i. e.,* whether, in general, a sentencing judge may take into account the quantity of marijuana possessed by a defendant. The precise issue presented in this case is, however, a much

narrower question — whether the quantity factor can be considered *in order to determine the existence of "commercial overtones."*

Clearly, a judge imposing sentence for a violation of *N. J. S. A.* 24:21–20 may consider the quantity of marijuana that a defendant possessed. As caselaw demonstrates, the main goals underlying a trial judge's choice of sentence are: (1) rehabilitation; (2) deterrence; and (3) protection of society from future criminal conduct on the part of a particular defendant. *See, e. g., State v. Leggeadrini,* 75 *N. J.* 150, 157–158 (1977); *State v. Jones,* 66 *N. J.* 563, 568 (1975). In the case of youthful offenders found to have violated *N. J. S. A.* 24:21–20, we have emphasized that among these goals rehabilitation is the most important. *See State v. Ward,* 57 *N. J.* 75, 82–83 (1970). *See also State v. Brennan, supra,* 115 *N. J. Super.* at 406–407. As long as quantity is considered *only* as it relates to the above criteria, this factor can properly be considered in combination with all other aggravating and mitigating circumstances bearing upon the seriousness of the crime and the character of the defendant.

Thus, the amount of marijuana possessed by a defendant may be relevant to his propensity to violate drug laws in the future and hence the need to impose a particular sentence in order to prevent recidivism. *See, e. g., Ward, supra,* 57 *N. J.* at 82–83. Meting out a heavier sentence when large quantities are involved may also deter others from wholesale use of a controlled dangerous substance. Finally, possession of large quantities may indicate that the defendant transcended statutory bounds to a greater extent, and hence is more deserving of punishment, than one who possesses merely a smaller amount.

Therefore, a trial judge may ordinarily take into account the quantity factor in imposing sentence for violation of *N. J. S. A.* 24:21–20. What he may not do, however, is consider this factor in order to assess whether possession was coupled with a commercial motive. For to do so would in

effect be to adjudge a defendant guilty of a statutory offense for which he has not been convicted.

## II

Even assuming the correctness of the majority's conclusion that ordinarily a judge may consider the "commercial overtones" present when imposing sentence for violation of *N. J. S. A.* 24:21–20, in the present case this factor clearly should not have been taken into account. Defendant was originally indicted on charges of both possession (*N. J. S. A.* 24:21–20) and possession with intent to distribute (*N. J. S. A.* 24:21–19). Before the jury rendered a verdict, defendant and the State agreed that defendant would plead guilty to the possession count and that the intent to distribute charge would be dismissed. The trial judge, in accepting the plea bargain, did, as the majority notes, tell defendant that a custodial sentence might be imposed. See *ante* at 184. He did not, however, in any way indicate that the sentence would be based upon the presence or absence of "commercial overtones."[1]

Our courts have now accepted plea bargaining as a legitimate and respectable adjunct to the administration of the criminal laws. *See, e. g., Bordenkircher v. Hayes,* 434 *U. S.* 357, 98 *S. Ct.* 663, 54 *L. Ed.* 2d 604 (1978); *State v. Thomas,* 61 *N. J.* 314, 321 (1972). We have emphasized, however, that if plea bargaining is to fulfill its intended purposes, it must be conducted fairly on both sides and "the results must not disappoint the reasonable expectations of either [party]." *State v. Thomas, supra,* 61 *N. J.* at 321; *see, e. g., Santobello v. New York,* 404 *U. S.* 257, 92 *S. Ct.* 495, 30 *L.*

---

[1] Although defendant was thus informed as to the possibility of a custodial sentence, he might well have expected that (1) his chances of probation would be much better if the commercialism charge were dropped and (2) any custodial sentence he might receive would be shorter than if commercialism were present. Thus, despite the judge's warning, there might well have existed justifiable expectations on defendant's part which were frustrated by the ultimate sentence.

*Ed.* 2d 427 (1971). A defendant who pleads guilty to a particular offense relinquishes three fundamental rights: (1) the right to be tried by a jury of his peers; (2) the right to confront witnesses; and (3) the right not to incriminate himself. By agreeing to a particular plea bargain, a defendant is therefore entitled to have his reasonable expectations honored, lest the procedure become a "trap" for the unwary. *Santobello, supra; State v. Thomas, supra,* 61 *N. J.* at 322.

A judge is not bound to honor a plea bargain negotiated by the prosecutor. If he feels that acceptance of its terms will not serve the ends of justice, he remains free to reject the bargain and allow the defendant to withdraw his plea. *See, e. g., State v. Thomas, supra,* 61 *N. J.* at 322; *State v. Brockington,* 140 *N. J. Super.* 422 (App. Div. 1976). He may not, however, accept the plea and then impose sentence in violation of its terms.

In the present case, defendant reasonably believed that by pleading guilty to the possession count, sentence would be imposed without regard to any commercial overtones that may have been present. This belief was justifiably derived from the fact that the charge of possession with intent to sell was dismissed as part of the plea. *See Brown v. State,* 245 *So.* 2d 41 (Fla. Sup. Ct. 1971). If the trial judge felt that the interests of justice mandated that "commercialism" be taken into account, he should have refused to accept the plea, and allowed the jury to return a verdict. He should not, as he did in this case, have accepted the plea and then proceeeded to impose sentence directly counter to defendant's reasonable expectations. At the least, the judge should have permitted defendant to withdraw the plea after it became evident that the plea was tendered under a misapprehension on defendant's part. *See, e. g., Brown, supra.* The course which the trial court in fact took — *i. e.,* treating the defendant as if he were guilty of possession "with intent to . . . distribute" — reduced to a nullity any possible benefit which the plea bargain presented. Thus, defendant contracted away his constitutional rights in return for an illusory promise.

Accordingly, this case shoud be remanded for resentencing at which the trial judge may not consider the commercial overtones of the defendant's offense. Alternatively, defendant should be allowed to withdraw his plea and stand trial.

*For reversal*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For affirmance*—Justice PASHMAN—1.