NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0849-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARIANO ANTUNA,

    Defendant-Appellant.

```
┌─────────────────────────────┐
│   APPROVED FOR PUBLICATION   │
│                             │
│      August 16, 2016        │
│                             │
│      APPELLATE DIVISION      │
└─────────────────────────────┘
```

Argued February 1, 2016 — Decided August 16, 2016

Before Judges Lihotz, Nugent and Higbee.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Accusation No. 00-02-0541.

Justin T. Loughry argued the cause for appellant (Loughry and Lindsay, LLC, attorneys; Mr. Loughry, on the brief).

Jason Magid, Assistant Prosecutor, argued the cause for respondent (Mary Eva Colalillo, Camden County Prosecutor, attorney; Mr. Magid, of counsel and on the brief).

The opinion of the court was delivered by

HIGBEE, J.A.D.

    Defendant Mariano Antuna appeals from an August 4, 2014 order denying his petition for post-conviction relief (PCR).

Defendant argues he received ineffective assistance of counsel because his trial counsel failed to properly advise him of potential immigration consequences resulting from his conviction following a guilty plea. Alternatively, defendant argues counsel's failure to read to him or have him complete the plea form, resulted in ineffective assistance of counsel. We agree with the latter contention and reverse.

Defendant was charged in Accusation No. 00-02-0541 with third-degree possession with intent to distribute heroin, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3). In 2000, defendant executed the written plea and waiver of indictment forms, and pled guilty to the Accusation. Question seventeen of the plea form, which was exclusively in English, was not answered. That question reads: "Do you understand that if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty? [YES] [NO] [N/A]."

It is undisputed that defendant is a Cuban native who could not understand English. With the aid of a Spanish interpreter, defendant testified he signed the negotiated plea agreement as completed by his attorney without actually reading the questions to him. Defendant further testified his attorney did not review question seventeen with him or advise of immigration consequences resulting from his guilty plea. During the plea

colloquy, the trial judge did not inquire whether defendant could read or understand English. Further, the judge did not remark that question seventeen was not answered, nor did he advise defendant he could be deported as a result of his conviction or ask whether counsel discussed immigration consequences with him.[1]

Defendant was thereafter sentenced to probation for three years with fines and penalties. Pursuant to a 2002 order for early discharge of probation, defendant's probation was terminated. In 2005, after applying for permanent residency status, defendant was subjected to removal proceedings by United States Immigration and Customs Enforcement. In 2013, defendant filed a verified petition for post-conviction relief and later supplemented his pleadings with a certification and brief.[2] Following a plenary hearing, the PCR judge filed an order and written opinion denying defendant's petition.

The PCR judge found defendant's testimony credible and stated "[b]ecause the defendant did not speak or read English

---

[1] Defendant asserted he would have proceeded to trial had he been aware of the risk of deportation to Cuba, associated with his guilty plea.

[2] Although defendant filed his PCR petition approximately eight years after becoming aware of his potential deportation, the PCR judge found there was excusable neglect on behalf of defendant. Whether defendant's PCR petition was time-barred pursuant to Rule 3:22-12(a) is not before this court.

A-0849-14T2

and did not indicate an answer to [q]uestion [seventeen] on the plea form, specifically addressing immigration consequences, the record before the [c]ourt supports the defendant's contention that he was not provided information regarding the immigration consequences." The judge also found that "if [defendant's trial counsel] provided any information, [he] would not have provided misinformation as he is not experienced in immigration law and would not have provided [immigration] advice." The PCR judge reasoned that because defendant "does not contend [his trial counsel] misinformed him about the immigration consequences . . . the representation was not deficient under Nuñez-Valdéz."[3]

Defendant appeals from that order, raising the following claims:

> I. THIS CASE CONSTITUTES AN INSTANCE OF ["]MIS-ADVICE", AND THEREFORE SHOULD COME WITHIN THE RULE OF NUÑEZ-VALDÉZ.
>
> II. EVEN IF NOT CONSIDERED A STRICT CASE OF MIS-ADVICE, THIS CASE EXPOSES THE USELESSNESS OF THE DISTINCTION BETWEEN MIS-ADVICE AND NON-ADVICE WHEN AN ATTORNEY, ON ACCOUNT OF LANGUAGE BARRIERS, CONTROLS THE PREPARATION AND EXECUTION OF THE PLEA FORM, AND FAILS TO ANSWER IN ANY MANNER ITEM 17. (NOT RAISED BELOW).

We defer to a PCR court's factual findings if they "are supported by sufficient credible evidence in the record." State

---

[3] State v. Nuñez-Valdéz, 200 N.J. 129 (2009).

v. Nash, 212 N.J. 518, 540 (2013). However, we review a PCR court's legal conclusions de novo. Id. at 540-41.

To succeed on a claim for ineffective assistance of counsel, "a defendant must show deficient performance by counsel 'so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment' and that the defendant was prejudiced by the attorney's performance." State v. Gaitan, 209 N.J. 339, 349-50 (2012) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984)), cert. denied, __ U.S. __, 133 S. Ct. 1454, 185 L. Ed. 2d 361 (2013). Such a showing must be proven by a preponderance of the evidence. Id. at 350.

An attorney's performance is reviewed for "reasonableness under prevailing professional norms." Ibid. (quoting Strickland, supra, 466 U.S. at 688, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694). Such an evaluation "must be 'viewed as of the time of counsel's conduct.'" Ibid. (quoting State v. Castagna, 187 N.J. 293, 314 (2006)). For a showing of prejudice in connection with a guilty plea, "a defendant must prove 'that there is a reasonable probability that, but for counsel's errors, [he or she] would not have pled guilty and would have insisted on going to trial.'" Id. at 351 (alteration in original) (quoting Nuñez-Valdéz, supra, 200 N.J. at 139).

Defendant's plea was entered prior to the United States Supreme Court's holding that requires "counsel must inform her client whether his plea carries a risk of deportation." Padilla v. Kentucky, 559 U.S. 356, 374, 130 S. Ct. 1473, 1486, 176 L. Ed. 2d 284, 299 (2010). The holding in Padilla is only applied prospectively. Chaidez v. United States, __ U.S. __, __, 133 S. Ct. 1103, 1107, 185 L. Ed. 2d 149, 155 (2013); accord Gaitan, supra, 209 N.J. at 373-74. Because this matter arose prior to Padilla, the legal standard controlling the advice defense counsel is obligated to provide when addressing immigration consequences of a conviction arising at the time a defendant enters a guilty plea is found in Nuñez-Valdéz. Gaitain, supra, 209 N.J. at 373-74.

In Nuñez-Valdéz, the Supreme Court held that the defendant's counsel's incorrect advice or misleading information regarding deportation and immigration consequences resulting from a guilty plea to an aggravated felony was sufficient to satisfy the performance prong of the Strickland analysis. Nuñez-Valdéz, supra, 200 N.J. at 140-42. Furthermore, based on the defendant's testimony that had he received correct advice, he would not have pled guilty, the Court found the prejudice prong of Strickland was satisfied as well. Id. at 142-43.

As discussed in Gaitan, the mandate that "defense attorneys now must advise their clients of potential immigration consequences of pleading guilty" — was never established prior to Padilla. Gaitan, supra, 209 N.J. at 346. Specifically, the Court emphasized "[t]hat was not our law, even under the Nuñez-Valdéz holding." Id. at 373.

Here, limiting the analysis to the fact that defendant's trial counsel did not affirmatively provide false advice or misinformation about defendant's immigration consequences resulting from his guilty plea ignores the uncontroverted evidence that counsel failed to convey to defendant the basic information on deportation included on the plea form. Defendant avers he was completely unaware of possible deportation consequences which the PCR judge found credible.

These facts support our conclusion that counsel's performance was deficient, despite a finding he did not provide affirmative misadvice, thus distinguishing it from cases governed by Nuñez-Valdéz, supra, 200 N.J. at 136 (where defendant completed the plea form). The facts presented in this matter are also distinguishable from our holdings in State v. Blake, 444 N.J. Super. 285, 290 (App. Div. 2016), and State v. Brewster, 429 N.J. Super. 387, 391 (App. Div. 2013), where we affirmed the denial of PCR petitions when the defendant

completed question seventeen in the plea form and no evidence of false advice or affirmative misinformation about deportation was presented. In these cases, question seventeen was answered in the plea form as required.

It is well-settled that a plea must be entered into knowingly, intelligently, and voluntarily. State v. Johnson, 182 N.J. 232, 236 (2005). Prior to executing a guilty plea, a defendant must "complete, insofar as applicable, and sign the appropriate form prescribed by the Administrative Director of the Courts." R. 3:9-2. Moreover, "the defendant must understand the nature of the charge and the consequences of the plea" including "consequences that are 'direct' or 'penal.'" Johnson, supra, 182 N.J. at 236 (quoting State v. Howard, 110 N.J. 113, 122 (1988)). See also State v. Bellamy, 178 N.J. 127, 139 (2003) ("We continue to stress the necessity of determining whether a consequence is direct or penal when analyzing whether a defendant must be informed of a particular consequence.").[4]

---

[4] Despite our previous recognition that "the [Supreme] Court has indicated its inclination to depart from the traditional differentiation between the penal consequences of a plea and its civil collateral consequences [,]" State v. Maldon, 422 N.J. Super. 475, 483 (App. Div. 2011), the Court has not yet abandoned that analysis.

The possibility of deportation is "similar to a penal consequence that requires notice to defendant."[5]  Nuñez-Valdéz, supra, 200 N.J. at 138.  See also Gaitan, supra, 209 N.J. at 372-73 ("Prior to Nuñez-Valdéz, immigration consequences had been categorized as collateral consequences of a guilty plea as to which there was no obligation to warn defendants.").  Therefore, the plea form "should instruct defendants of their right to seek legal advice regarding their immigration status."  Nuñez-Valdéz, 200 N.J. at 144.  Such a requirement provides "[c]larity as to the direct and penal consequences of a defendant's guilty plea" and "serves to ensure that a defendant's 'expectations [are] reasonably grounded in the terms of the plea bargain.'"  Johnson, supra, 182 N.J. at 237 (alteration in original) (quoting State v. Marzolf, 79 N.J. 167, 183 (1979)).  A defendant should not be completely unaware or uninformed "as to a material element of a plea negotiation, which [he] has relied [on] in entering his plea."  Id. at 236-37 (alteration in original) (quoting State v. Nichols, 71 N.J. 358, 361 (1976)).

_____

[5]  Although the decision in Nuñez-Valdéz did not turn on "the traditional dichotomy" of "whether consequences of a plea are penal or collateral," the Court nonetheless viewed deportation as "similar to a penal consequence."  Nuñez-Valdéz, supra, 200 N.J. at 138.

Here, defendant did not understand English while executing the plea form or while entering his guilty plea before the court. Although defendant's attorney did not provide false advice or affirmative misinformation to defendant about his risk of deportation, we nonetheless conclude the attorney's performance was deficient for failing to have defendant review every question on the plea form. Had he done so, defendant would have been on notice of the possibility of deportation, something that a defendant must be at a minimum aware of, prior to entering a knowing, intelligent, and voluntary plea. Without being given the opportunity to review every question on the plea form, we conclude that defendant was provided with representation that was not "reasonable[] under prevailing professional norms."[6] Gaitan, supra, 209 N.J. at 350 (quoting Strickland, supra, 466 U.S. at 688, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the forego
is a true copy of the original or
file in my office.

---

[6] We note defendant's argument that his attorney's performance was deficient for failing to have defendant complete the plea form was not raised at the trial level. Therefore, our review is governed by the plain error standard. R. 2:10-2. Plain error is that which is "clearly capable of producing an unjust result." Ibid. We conclude the error here, was "clearly capable of producing an unjust result." Ibid.