# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4533-18T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

WALNER SAMEDY,

      Defendant-Appellant.

_____

Submitted August 25, 2020 – Decided September 10, 2020

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 12-06-1036.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Lisa Sarnoff Gochman, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Walner Samedy appeals from a February 1, 2019 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. For the reasons that follow, we affirm in part and vacate and remand in part.

I.

We derive the following facts and allegations from the record. Defendant resided with his girlfriend and her two children in an apartment in Wall Township. On the evening of September 13, 2011, defendant arrived home from work and noticed L.V.[1] babysitting the children; defendant did not know L.V. Defendant sat next to her. L.V. alleged defendant sexually assaulted her by inappropriately touching her buttocks and engaging in sexual intercourse with her without her consent.

L.V. reported the incident to the police and identified defendant as her assailant. The day after the incident, police officers went to defendant's workplace and questioned him in the parking lot about the allegations. Defendant was not yet under arrest and had not been administered Miranda[2] warnings.

---

[1] We identify the victim by initials to protect her privacy. R. 1:38-3(c)(12).

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

Defendant was born and raised in Haiti and has limited command of the English language. Due to difficulties in communicating with defendant, the officers requested another officer who spoke Haitian-Creole to assist. The interpreting officer did not translate or explain the request for exemplars form to defendant.

The police asked defendant for a DNA sample by buccal swab. Without being told he did not have to consent to providing the sample and had the right to consult with an attorney, defendant agreed to the buccal swab. The DNA analysis revealed that the DNA specimen from the buccal swab matched the DNA sample obtained from L.V.'s underwear.

In May 2012, a Monmouth County grand jury returned an indictment charging defendant with second-degree sexual assault while using physical force or coercion, N.J.S.A. 2C:14-2(c)(1) (count one); and fourth-degree criminal sexual contact while using physical force or coercion, N.J.S.A. 2C:14-3(b) (count two). On October 5, 2012, defendant was arrested and was unable to post bail.

Defense counsel did not move to suppress the DNA evidence obtained through the warrantless buccal swab. He allegedly advised defendant that it would take over two years to get to a trial. Rather than proceed to trial,

defendant entered into a plea agreement. In exchange for pleading guilty to fourth-degree criminal sexual contact, the State recommended defendant be sentenced to time served, without probation, and no contact with L.V. or return to the scene of the crime. The State also recommended that the second-degree sexual assault charge be dismissed at sentencing. The State had no objection to defendant being released from jail after the plea was entered.

Judge Francis Vernoia conducted a detailed plea hearing. At the outset, the exact terms of the plea agreement were set forth. Defense counsel confirmed that defendant consulted with immigration counsel—in his presence—to inform defendant of the potential immigration consequences of his plea agreement. Counsel also stated that he was confident that defendant understood the immigration consequences. Counsel confirmed that he reviewed discovery with defendant using an interpreter.

Defendant testified with the assistance of an interpreter.[3] He confirmed he was pleading guilty to fourth-degree criminal sexual contact. Defendant stated he completed high school/college in Haiti, where he studied journalism. He confirmed he was sober, not on medication, and was not suffering from any

---

[3] A Haitian-Creole interpreter was used during all court proceedings.

A-4533-18T2

physical or mental problems that would affect his ability to understand the proceedings.

Defendant also confirmed he reviewed the plea forms with counsel who answered all his questions, that his answers on the plea form were truthful, and that he signed and initialed the plea form. Defendant acknowledged that he understood the charge he was pleading guilty to, the maximum penalty for fourth-degree criminal sexual contact, and the recommended sentence. He confirmed that he wanted the court to accept the plea agreement.

Defendant further acknowledged that he was pleading guilty of his free will, without being threatened, coerced, or forced to do so. He likewise confirmed that he was pleading guilty because he was, in fact, guilty.

Finally, defendant acknowledged that he was satisfied with his attorney's advice, that his attorney answered all his questions, and that he did not need any more time to speak to his attorney about the case or the plea agreement.

Defendant was in the United States on temporary protective status. After acknowledging he was not a United States citizen, defendant confirmed that he understood that his guilty plea and conviction may result in his removal from the United States and prevent him from re-entering the country. He further confirmed that his attorney answered all his questions regarding the immigration

consequences of his plea and conviction and he understood that he had the right to seek individualized legal advice on the immigration consequences.

Defendant also acknowledged the rights he was giving up by pleading guilty, including any defenses to the charges and his right to a jury trial. Understanding those consequences, defendant indicated he still wished to plead guilty. Defendant then gave an adequate factual basis for his plea, admitting that he touched L.V. on her buttocks with his hands without her consent for his own personal gratification or to humiliate her. Judge Vernoia accepted defendant's plea, scheduled a sentencing hearing, and released defendant from custody.

Judge Vernoia also conducted the sentencing hearing. Defense counsel stated the presentence report was accurate. Both the prosecutor and defense counsel requested that defendant be sentenced in accordance with the plea agreement. Defendant elected not to allocute.

The judge found aggravating factor nine (need to deter defendant and others from violating the law), N.J.S.A. 2C:44-1(a)(9); and mitigating factors seven (no prior history of delinquency or criminal activity), N.J.S.A. 2C:44-1(b)(7); and ten (defendant is particularly likely to respond affirmatively to probation), N.J.S.A. 2C:44-1(b)(10). The judge found the aggravating and

mitigating factors in equipoise. Defendant was sentenced in accordance with the plea agreement to time served (229 days) without probation, no contact with the victim or return to the scene of the crime, and appropriate penalties and assessments. The judge then dismissed count one.

After the sentence was imposed, defense counsel engaged in the following colloquy with defendant:

> DEFENSE COUNSEL: Judge, if I may, I just want to confirm, again, that he understands that he does need to go seek out an immigration attorney. This was done during the plea I know, but I went over it with him again that now this is a conviction, he's sentenced, that there are going to be some immigration consequences for him and that he really needs to get to an immigration attorney immediately.
>
> COURT: Okay. Do you understand that, sir?
>
> DEFENDANT: Yes.
>
> COURT: Okay. If you have any questions about that, you can confer with [defense counsel] directly.

Defendant did not move to vacate his guilty plea before or after sentencing and did not file a direct appeal from his conviction or sentence.

On November 13, 2017, defendant filed a timely pro se PCR petition. Defendant alleged plea counsel failed to advise him that his guilty plea exposed

him to deportation. He contended that if he understood the complete immigration consequences, he would not have pled guilty to count two.

Counsel was appointed to represent defendant and filed an amended petition and supporting brief asserting: (1) plea counsel was ineffective in failing to file a motion to suppress the results of the DNA testing that matched defendant's DNA profile to the specimen obtained from L.V.'s underwear; (2) the Haitian-Creole interpreter used by the police did not translate the request for exemplars; (3) defendant was not informed he could refuse the buccal swab or that he could consult with a lawyer; (4) defendant was not advised by plea counsel that his guilty plea would prevent him from obtaining meaningful employment or public housing; (5) the sex with L.V. was consensual and plea counsel failed to convey to the prosecutor that L.V. demanded $50 from defendant when the sexual relations were over; and (6) plea counsel unduly influenced defendant to accept the plea agreement. Defendant further claimed that he and plea counsel did not effectively communicate.

Defendant noted that he has been detained by Immigration and Customs Enforcement twice since his plea and faced additional deportation proceedings.

Following oral argument, the PCR judge issued an oral decision and order denying the petition without an evidentiary hearing. Without making findings

8

or providing meaningful analysis, the judge determined plea counsel was not ineffective by failing to file a suppression motion because counsel "likely knew" defendant voluntarily consented to the buccal swab, making the likelihood of success "extremely difficult, if not slim to none."

The judge concluded defendant had not shown that plea counsel's "performance was deficient, the performance prejudiced his defense, or that counsel provided him with misinformation or misleading information." He further found "counsel was not ineffective for failing to advise of the collateral consequences" of the plea and conviction.

As to defendant's claim that plea counsel failed to inform the prosecution that the victim demanded money after engaging in sex, the judge determined "there's no evidence the plea counsel even knew about this demand at any point during the litigation."

In regard to defendant's claim that plea counsel erroneously told him it would take over two years for the case to go to trial, the judge noted that "[d]efendant does not allege . . . he would have pled not guilty and insisted on a trial, had counsel not made those statements, nor has he stated why the statements are either erroneous or incorrect."

A-4533-18T2

The judge also rejected defendant's claim that counsel was ineffective by failing to advise him that deportation would be more likely than not as a result of pleading guilty. After reviewing the portion of the plea transcript pertaining to the immigration consequences of the plea, the judge noted "defendant had the benefit of both plea counsel and an immigration attorney advising him of the consequences" of the plea. This appeal followed.

Defendant raises the following points for our consideration:

POINT ONE

THIS MATTER SHOULD BE REVERSED AND REMANDED TO THE PCR COURT FOR AN EVIDENTIARY HEARING BECAUSE MR. SAMEDY WAS UNAWARE HE WOULD BE DEPORTED BY VIRTUE OF HIS GUILTY PLEA.

POINT TWO

THIS MATTER SHOULD BE REVERSED AND REMANDED TO THE PCR COURT FOR AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED REGARDING PLEA COUNSEL'S FAILURE TO FILE A MOTION TO SUPPRESS DNA EVIDENCE ILLEGALLY OBTAINED FROM MR. SAMEDY, WHICH CONNECTED HIM TO THE ALLEGED SEXUAL ASSAULT.

II.

When a conviction is based on a guilty plea, a defendant must satisfy two criteria to set aside the plea based on ineffective assistance of counsel. State v.

10

Nuñez-Valdéz, 200 N.J. 129, 139 (2009). The defendant must demonstrate that: "(i) counsel's assistance was not 'within the range of competence demanded of attorneys in criminal cases'; and (ii) 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'" Ibid. (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)). "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Strickland v. Washington, 466 U.S. 668, 694 (1984). Defendant must also show that proceeding to trial "would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010); accord Nuñez-Valdéz, 200 N.J. at 139.

A defendant claiming ineffective assistance of counsel based on failure to file a suppression motion must not only satisfy both prongs of Strickland but must also prove the motion would have been granted, had it been filed. State v. Goodwin, 173 N.J. 583, 597 (2002) (citing State v. Fisher, 156 N.J. 494, 501 (1998)).

"A defendant must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Porter, 216 N.J. 343, 355 (2013) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)). In order to be entitled to an evidentiary hearing, a defendant must establish "a

prima facie case in support of post-conviction relief, a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief."  R. 3:22-10(b).  "To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits."  Ibid.

"A court shall not grant an evidentiary hearing:  (1) if an evidentiary hearing will not aid the court's analysis of the defendant's entitlement to post-conviction relief; [or] (2) if the defendant's allegations are too vague, conclusory or speculative."  R. 3:22-10(e)(1), (2).

In addition, defendant must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance.  State v. Eckels, 199 N.J. 344, 358 (2009) (quoting Strickland, 466 U.S. at 689). Strategic choices, made after thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable.  Strickland, 466 U.S. at 689.

### III.

Defendant contends he was unaware that he would be deported if he was convicted of fourth-degree criminal sexual contact.  The record belies that claim.

12

The plea transcript establishes that defendant had discussed the consequences of pleading guilty and being convicted of that crime with both plea counsel and immigration counsel. The judge also advised defendant that his guilty plea and conviction may result in his removal from the United States and prevent him from re-entering the country. Defendant confirmed that he understood those consequences, did not need additional time to further consult with plea or immigration counsel, and wanted to proceed with the plea agreement. He also confirmed he was satisfied with the services of plea counsel who had answered all his questions.

Notably, defendant does not contend that plea counsel provided false advice or affirmatively misadvised him regarding the consequences of the conviction on his immigration status. Rather, he claims that counsel failed to advise him that deportation was mandatory for a conviction for fourth-degree criminal sexual contact. Defense counsel, the plea judge, and the plea form all notified defendant that he was at risk of deportation. Having been notified, defendant cannot claim counsel was ineffective. See Padilla, 559 U.S. at 374 ("counsel must inform her client whether the plea carries a risk of deportation"); State v. Gaitan, 209 N.J. 339, 346 (2012) (stating that "defense attorneys now must advise their clients of potential immigration consequences of pleading

guilty"); State v. Antuna, 446 N.J. Super. 595, 601-03 (App. Div. 2016) (concluding that failure to advise a client of the possibility of deportation by pleading guilty constituted ineffective assistance of counsel).

Defendant also argues that plea counsel did not advise him that his guilty plea would prevent him from obtaining meaningful employment or public housing. These alleged consequences are not direct and penal consequences of defendant's guilty plea. Counsel was not required to provide advice regarding the collateral consequences of his plea and conviction. State v. Heitzman, 209 N.J. Super. 617, 622 (App. Div. 1986) (holding that "defendant need be informed only of the penal consequences of his plea and not the collateral consequences"), aff'd o.b., 107 N.J. 603 (1987); see Pressler & Verniero, Current N.J. Court Rules, cmt. 1.4.3 on R. 3:9-2 (2020) ("Failure of the defendant to understand the collateral consequences of conviction will ordinarily not vitiate the plea.").

Accordingly, the PCR court properly rejected defendant's claim that counsel was ineffective for failing to inform him of the direct and collateral consequences of his conviction.

IV.

In his amended petition, defendant contends the sex with L.V. was consensual; plea counsel failed to convey to the prosecutor that L.V. demanded $50 from defendant when the sexual relations were over; and plea counsel unduly influenced defendant to accept the plea agreement rather than going to trial. Defendant did not brief these issues on appeal. We deem them waived or abandoned. See Woodlands Cmty. Ass'n v. Mitchell, 450 N.J. Super. 310, 318-19 (App. Div. 2017) ("An issue not briefed on appeal is deemed waived." (quoting Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011))).

V.

Finally, defendant argues that the buccal swab was taken through invalid consent. He points to the fact that the exemplar form, which was printed in English, was not explained or translated for him into Haitian-Creole. He claims he was thus unaware that he did not have to consent to the buccal swab and had the right to consult with an attorney before giving his consent. Moreover, he was not Mirandized at that point.

The PCR court concluded that "counsel was not required to file a motion to suppress" because "[c]ounsel likely knew that defendant voluntarily gave the DNA swab to the police, making the chances of the motion extremely difficult, if not slim to none." On that basis, the court found "counsel could not be

15

ineffective for failing to file the motion." Viewing the facts in a light most favorable to defendant, the record does not support that conclusion.

We recognize that a buccal swab is minimally intrusive. State v. Camey, 239 N.J. 282, 311 (2019) (citing Maryland v. King, 569 U.S. 435, 463 (2013)). However, as explained by the Court in Camey:

> A buccal swab is a common method of law enforcement collection of specimen material for DNA testing. But, it is also beyond dispute that the taking of a buccal swab for the purposes of obtaining a DNA sample is a search. And because a buccal swab constitutes a search, it must be obtained in a manner consistent with constitutional search and seizure principles for valid use in a criminal prosecution.
>
> To pass constitutional muster, a search must be conducted pursuant to a search warrant or must fall within an exception to the warrant requirement. One well-recognized exception to the warrant requirement is consent. Obtaining voluntary consent to conduct a buccal swab is one way to obtain a constitutionally valid swab without a search warrant. To ensure validity, warnings given to an individual informing about the right to refuse consent help the State later carry its burden to demonstrate that the consent was truly a voluntary, knowing, and intelligent waiver of the right to be free of such an intrusion.
>
> [Id. at 299-300 (internal citations and quotation marks omitted).]

On this limited record, where no evidentiary hearing was conducted, we do not attempt to determine whether defendant's decision to provide the buccal

swab was knowing and voluntary. Rather, a remand to conduct an evidentiary hearing is appropriate for the parties to present testimony and other evidence in support of their respective positions. If the remand court determines that defendant did not knowingly and voluntarily consent to the buccal swab, the State may then assert that the DNA evidence would have been admissible under an exception to the exclusionary rule.

We further recognize that the victim identified defendant. This was not a random encounter on the street—the victim was babysitting for defendant. It may also be that the DNA evidence was not necessary for a conviction had the case gone to trial. However, the failure to file a suppression motion to suppress the DNA evidence placed defendant in a position where he realistically could not win at trial by claiming he did not engage in sex with the victim, exposing him to potential second-degree sentencing, including being subject to Megan's Law. This effectively limited his defense to a claim that the sex was consensual, which likely weighed heavily in his decision to plead guilty to count two despite the immigration consequences.

Accordingly, we vacate the denial of defendant's PCR petition as to the failure to move to suppress the results of the DNA testing and remand for the PCR court to conduct an evidentiary hearing to determine whether defendant

knowingly and voluntarily consented to the buccal swab. If the court determines he did not, it shall then entertain argument by the State that the DNA evidence would have been obtained through inevitable discovery. In so ruling, we express no opinion on the likely outcome of the evidentiary hearing or any argument regarding inevitable discovery.

Affirmed in part and vacated and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4533-18T2