**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2910-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOHN L. HARRIS, a/k/a
JOHN STEVENSON,
LEROY J. HARRIS,
JOHN L. HARRIS III,
JOHN L. HARRIS 3RD, and
JOHNLEROY HARRIS,

    Defendant-Appellant.

_____

Argued October 6, 2025 – Decided October 23, 2025

Before Judges Sabatino, Natali and Bergman.

On appeal from the Superior County of New Jersey, Law Division, Burlington County, Indictment No. 18-07-0925.

Steven E. Braun, Designated Counsel, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Steven E. Braun, on the brief).

Nicole Handy, Assistant Prosecutor, argued the cause for respondent (LaChia L. Bradshaw, Burlington County Prosecutor, attorney; Nicole Handy, of counsel and on the brief).

PER CURIAM

This appeal in a burglary case arises from the trial court's denial of defendant John L. Harris's petition for postconviction relief ("PCR") alleging ineffective assistance of his trial counsel. We affirm.

We incorporate by reference our description of the underlying facts and investigation set forth in our March 2022 opinion affirming defendant's conviction. State v. Harris, No. A-0303-19 (App. Div. Mar. 17, 2022), certif. denied, 252 N.J. 84 (2022). We summarize that background here, along with additional facts that developed in the present PCR case.

At 12:07 a.m. on February 9, 2018, Mount Holly Township police officers responded to a break-in alarm at the Robin's Nest restaurant. After reviewing security camera footage, the police broadcasted a description of the intruder. That led to defendant being stopped on the street at about 12:39 a.m. by Police Officers Declan Deveney and Tom Greenwich. Defendant was holding a striped

drawstring backpack and a laptop bag, and was sitting on a curb when Deveney and Greenwich began to question him.[1]

Among other things, the officers asked defendant where he had come from earlier that night. Defendant repeatedly told them that he had been at a local bar named Ott's for several hours. Deveney and Greenwich further asked defendant what was in the backpack and laptop bag in his possession. He responded that the laptop bag had chicken in it and the backpack contained beer. He did not mention that the laptop bag contained anything else.

Soon thereafter, at about 12:45 a.m., Police Lieutenant James Harper and at least three other police officers arrived at the scene. Harper had viewed the Robin's Nest video. He noticed that defendant's backpack matched the striped backpack shown in the video. Harper also noted that defendant's height and build were consistent with the intruder's appearance on the video, and that he was wearing gloves and other similar articles of clothing. According to Harper, he recognized defendant from flyers issued by the detective bureau which identified him as a suspect in several local burglaries.

---

[1]  Most of the interaction is recorded on a police body-worn camera. The recording, which has an audio track, was played as an exhibit in the trial court and has been supplied as part of the record on the present appeal.

By this point, there were at least six officers surrounding defendant, standing in close proximity to him. Officer Greenwich began to rapidly flash his flashlight on defendant, as Harper questioned him about his whereabouts that evening and the contents of the laptop bag and backpack. Defendant reiterated that he had come from Ott's, and he further denied having been at Robin's Nest earlier that night. He also did not mention that the laptop bag contained a computer.

Harper patted defendant down and found no weapons. He opened the laptop bag and found a laptop (later shown to be stolen), trash bags, and an open bottle of whiskey.

After the police recovered additional security footage from Robin's Nest that provided a clear view of the suspect's face, defendant was arrested. The police then obtained a search warrant for defendant's home, and the search uncovered additional evidence of crimes he had committed.

At no point throughout the night's events was defendant provided with Miranda warnings by any officer who questioned him.[2]

Defendant was charged in a twenty-two-count indictment with offenses that included fourth-degree criminal mischief, third-degree burglary, third-

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2910-23

degree theft by unlawful taking, and third-degree criminal attempt of burglary. Represented by his trial counsel, defendant moved to suppress under the Fourth Amendment and New Jersey law the physical evidence resulting from the warrantless search and seizure of his person, backpack, and laptop bag. The items stemming from this search and seizure included the aforementioned whiskey, trash bags, and laptop, as well as business cards from a nearby surgical center that had also been burglarized.

Following an evidentiary hearing at which Lieutenant Harper testified and was cross-examined by trial counsel, the trial court denied defendant's motion to suppress the seized items. In essence, the court concluded that the physical search was justified as a search incident to a lawful arrest based on probable cause.

Plea negotiations ensued, and defendant pled guilty to one count of third-degree burglary. The other counts of the indictment were dismissed. Consistent with the plea agreement, the court sentenced defendant to an extended term of eight years with a four-year parole disqualifier.

Defendant appealed his conviction resulting from the denial of his search-and seizure motion, and his sentence. As noted above, we affirmed the

A-2910-23

conviction and sentence in our March 2022 opinion, and the Supreme Court denied certification.

In May 2023, defendant filed a PCR petition alleging his trial counsel was ineffective by: (1) failing to move to suppress his statements to the police; (2) failing to challenge the search of his home; and (3) failing to present mitigating factors at sentencing. The PCR court denied defendant's petition, finding no Miranda violation had occurred and no basis to alter the sentence.

In his present appeal, defendant raises the following two issues:

> POINT I
>
> DEFENDANT IS ENTITLED TO AN EVIDENTIARY HEARING DUE TO THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHO FAILED TO RAISE A MOTION TO SUPPRESS DEFENDANT'S ORAL REMARKS TO THE POLICE.
>
> POINT II
>
> TRIAL DEFENSE COUNSEL WAS INEFFECTIVE BY FAILING TO MAKE ANY ARGUMENTS REGARDING MITIGATING FACTORS AT SENTENCING.

In evaluating these arguments, we adhere to well settled principles. Under the Sixth Amendment of the United States Constitution, a person accused of a crime is guaranteed the effective assistance of legal counsel. Strickland v. Washington, 466 U.S. 668, 690 (1984). To establish a deprivation of that right,

A-2910-23

a convicted defendant is required to satisfy the two-part test enunciated by the United States Supreme Court in Strickland, demonstrating that: (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the accused's defense. Id. at 687; see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey). In reviewing ineffective assistance claims, courts apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

"With respect to the performance prong of [Strickland], . . . [t]he [United States Supreme] Court endorsed extreme deference in evaluating the performance of counsel." Fritz, 105 N.J. at 52 (citing Strickland, 466 U.S. at 688-89). "[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy . . ." Id. at 54 (citation omitted); see also State v. Echols, 199 N.J. 344, 357-59 (2009).

"The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006) (citing State v. Marshall, 123 N.J. 1, 165 (1991)). Further, "[t]here is a 'strong presumption' that counsel's attention to

7

certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" Harrington v. Richter, 562 U.S. 86, 109 (2011) (citing Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam)) (emphasis added).

The PCR court concluded that defendant had not satisfied either of the two prongs of Strickland. In addition, the court found that defendant had not presented a prima facie case of ineffectiveness that would warrant an evidentiary hearing. State v. Preciose, 129 N.J. 451, 462-63 (1992).

With respect to Strickland prong one, the trial court concluded that no Miranda violation occurred because it did not regard the questioning by the officers as a "custodial interrogation." In particular, the court determined that defendant was free to leave when he was questioned by the police at curbside and thus was not in custody until the point when Lieutenant Harper placed him under arrest. The court also did not regard the content and tenor of the pre-arrest questioning as constituting an "interrogation." Hence, it deemed that a hypothetical motion to suppress defendant's statements on Miranda grounds would have been fruitless.

Generally, in reviewing a trial court's ruling on the admissibility of a defendant's statement, an appellate court "defer[s] to the trial court's factual findings that are supported by sufficient credible evidence in the record and will

A-2910-23

not disturb those findings unless they are 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Rivas, 251 N.J. 132, 152 (2022) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). However, "the interpretation of law 'and the consequences that flow from established facts' are not entitled to deference and are reviewed de novo." State v. Carrion, 249 N.J. 253, 279 (2021) (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

We respectfully have substantial doubts about the PCR court's Miranda analysis. There are strong indicia that defendant in this case was subjected to a custodial interrogation during the police encounter. Both elements of an instance of custodial interrogation, i.e., custody and interrogation, are arguably present here, substantiated by the body-worn camera recording and the suppression hearing transcript.

Case law instructs that, for purposes of a Miranda analysis, custody "does not necessitate a formal arrest, 'nor does it require physical restraint in a police station, nor the application of handcuffs, and may occur in a suspect's home or a public place other than a police station.'" State v. Ahmad, 246 N.J. 592, 610-11 (2021) (quoting State v. P.Z., 152 N.J. 86, 103 (1997)). "'The critical determinant of custody is whether there has been a significant deprivation of the suspect's freedom of action.'" State v. Erazo, 254 N.J. 277, 298-99 (2023)

(quoting P.Z., 152 N.J. at 103). In making this determination, "[t]he court considers factors such as 'the time and place of the interrogation, the status of the interrogator, [and] the status of the suspect.'" Id. at 299 (quoting P.Z., 152 N.J. at 103).

Here, there is substantial evidence that defendant's "freedom of action" was significantly restricted when he was surrounded by officers on the curb after having been stopped and asked numerous questions. He was on the ground and would have had to pass by one or more officers if he got up and tried to walk or run away. A flashlight was trained on his body so the police could easily monitor any movements. A reasonable person in defendant's shoes arguably would not have felt free to leave. See Erazo, 254 N.J. at 198; Hubbard, 222 N.J. at 263.

Objectively considered, the questioning by the officers could be viewed as sufficiently accusatory to amount to an interrogation. Interrogation occurs when "a suspect is in police custody and 'is subjected to either express questioning or its functional equivalent,' which may include 'any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" State v. Tiwana,

A-2910-23

256 N.J. 33, 42 (2023) (quoting R.I. v. Innis, 446 U.S. 291, 300-01 (1980)); see also Hubbard, 222 N.J. at 266.

Here, the officers' repeated queries of defendant—focusing on his claimed whereabouts at Ott's and his denials of being at Robin's Nest—comprised the "interrogation" of a likely suspect who matched the description of the Robin's Nest burglar.  To a lesser extent, the officers' multiple questions of defendant about the contents of his backpack and bag were similarly designed to attempt to elicit incriminating information.[3]

That said, even if we were to set aside the PCR court's Miranda analysis, the second prong of Strickland, i.e., actual prejudice, is not shown by this record. When determining whether a criminal defendant was prejudiced by counsel's actions, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."  Strickland, 466 U.S. at 695.  To successfully prove prejudice, a defendant who alleges actual ineffectiveness

---

[3] We need not speculate on counsel's motives to confine his suppression motion to Fourth Amendment issues and to not include a claim of a Fifth Amendment violation as well.  We do note that there would have been potential dissonance in defendant arguing, on the one hand, under the Fourth Amendment that he was not properly under arrest to justify the search and seizure of his belongings incident to an arrest while simultaneously arguing, on the other hand, under the Fifth Amendment that he was "in custody."

must make a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In this context, a "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also State v. Antuna, 446 N.J. Super. 595, 600 (App. Div. 2016).

The PCR court aptly found that defendant has failed to demonstrate such a reasonable probability. The State's proofs of his guilt of burglary were exceedingly strong. In particular, the Robin's Nest surveillance video depicts a person resembling defendant and clothed like defendant "caught in the proverbial act" of burglary. The burglar is on film holding a distinctively striped backpack like the one possessed by defendant. The whiskey bottle and stolen laptop found in defendant's bag correspond to items that could have been taken from the restaurant.

The State did not need defendant's unwarned statements to the police to prove his guilt beyond a reasonable doubt, had the matter gone to trial. At most, the statements would have been cumulative evidence. There was plenty of independent proof of guilt, so as to render a hypothetical suppression of his statements inconsequential. Meanwhile, defense counsel negotiated a very

A-2910-23

favorable plea agreement—one that spared defendant convictions on multiple other counts of the indictment and a longer potential aggregate sentence.

In sum, we affirm the denial of defendant's PCR petition on Strickland prong two, without relying on Strickland prong one.

Little needs to be said about defendant's second argument asserting that his counsel was ineffective at sentencing in not arguing mitigating factors one, N.J.S.A. 2C:44-1(b)(1) (conduct not causing serious harm) and two, N.J.S.A. 2C:44-1(b)(2) (defendant not contemplating such serious harm).

Defendant was extended-term eligible and initially faced an even longer sentence than the limit his attorney negotiated. His conduct in burglarizing a commercial establishment after hours, while not violent, nonetheless portended a criminal purpose to commit an additional offense within that structure. See N.J.S.A. 2C:18-2(a)(1). As we noted in our original opinion on direct appeal, Harris, slip op. at 21-26, the sentence was justified and does not shock the judicial conscience. See State v. Fuentes, 217 N.J. 57, 70 (2014). Defendant had four previous convictions, several of them involving burglary or theft

crimes. An invocation of mitigating factors one and two would not have materially affected the overall fairness of the sentence.[4]

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*m.c. Harly*

Clerk of the Appellate Division

---

[4] At oral argument before us, appellate counsel extemporaneously asserted that defendant also should not have received an extended term because it was imposed by a judge rather than determined by a jury. Rather than allowing post-argument supplemental briefs addressing the point, we simply note that appellate counsel has orally raised the issue. Defendant may pursue timely relief on that issue through a petition for certification with the Supreme Court, which currently has that very legal issue before it and is pending argument. See State v. Carlton, 260 N.J. 478 (2025) (granting certification).